W. V. CHOISSER

*v.*

THE PEOPLE *ex rel.* Jesse Rude, Collector.

*Filed at Mt. Vernon January 18, 1892.*

1. MUNICIPAL BONDS—*in aid of railroad—issued under a vote for a subscription to the capital stock.* A proposition for a county subscription of $100,000 to the capital stock of a railway was said to have carried on a vote of the people at an election properly called. Under the authority of such vote the county board entered into a contract, whereby the county was to subscribe $100,000, payable in county bonds, and sell its share of stock for the sum of $5000, which was done, the county board issuing and delivering but $95,000 of its bonds in full payment of its subscription : *Held,* that the transaction, as finally consummated, was simply a donation of $95,000, and that the county board had no power to issue the bonds of the county therefor, and that such bonds were void as against the railroad company holding the same.

2. A statute or charter of a railway company authorizing the counties, cities, etc., through or near which the railroad may run, to subscribe to the capital stock of such company, on certain restrictions and conditions, will not authorize a donation by a municipal corporation to aid in the construction of a railroad. The power to aid in building a railroad by subscribing for a part of its capital stock does not include or even imply the power to make a donation.

3. SAME—*authority to issue must be strictly pursued.* The rule is well settled that there is no inherent power in municipal corporations to aid in the construction of railroads, either by becoming subscribers to the capital stock of the railway company, or by making donations to such company of money or bonds, but such power can be given only by express legislative provision, and the authority, when conferred, must be strictly pursued.

4. SAME—*vote authorizing subscription to stock will not authorize donation of bonds.* By the constitution of 1870 all municipal subscriptions and donations are absolutely prohibited, except such as were authorized under prior laws by a vote of the people, and these must be executed strictly according to the terms in which they are authorized. It must be upon the terms and conditions as voted. A vote authorizing a subscription will not authorize a donation of municipal bonds.

5. SAME—*issued to railway company—presumed to remain in hands of the company.* Where the bonds of a county are shown to have been delivered in payment of a subscription of the county to the capital stock of a railway company, or as a donation to such company, to aid in the construction of a railroad, in 1872, but nothing is shown as to the disposition of them, it was *held,* on application for judgment in 1891, for taxes of 1890, levied to pay interest on such bonds, that it would be presumed that such bonds are still in the hands of the railway company, and that there were no rights of innocent purchasers to be protected.

6. SAME—*proof of notice of election to vote on issuing.* Where the record of the county board relating to the issue of county bonds to a railway company contained no recital or finding showing the giving of notice of the election to vote on the proposition of a corporate subscription, and the county clerk, the custodian of the records of the county court, testified that he had made diligent and thorough search of the records and files of his office, and was unable to find any paper or record indicating that any notice of such election was ever given, it was *held,* that as the burden of proof of the giving of notice of the election was upon the party asserting the validity of the bonds, such issue should have been found against him.

7. SAME—*issued since 1870—presumption against validity of.* Whatever may be the rule in case of bonds issued prior to the adoption of the constitution of 1870, the rule seems to be well settled that when bonds have been issued since its adoption, all presumptions are against them, so as to throw upon those asserting their validity, the burden of proving the legality of the election pursuant to which it is claimed the bonds were issued.

8. MUNICIPAL INDEBTEDNESS—*power of legislature to create.* The legislature has not the constitutional power to create a corporate in-

debtedness of a county or city in favor of a railway company, by declaring an illegal vote to subscribe to the capital stock of such railway company is valid. It is not within the power of the legislature to compel a municipal corporation, without its own consent legally expressed, to enter into or assume obligations to others.

9. SAME—*power to validate void contract.* An act of the legislature professing and attempting to validate a contract of a county to make a donation to a railway company, such contract being utterly void for want of power to enter into the same, and thus impose upon the county an indebtedness to which it has never assented, is null and void, being in violation of the constitution.

APPEAL from the County Court of Saline county; the Hon. A. G. ABNEY, Judge, presiding.

This was an application, by the collector of taxes of Saline county, for judgment against block 15, in Wilson & Frazel's addition to the town of Harrisburg, for delinquent taxes for the year 1890. The appellant, who was the owner of said block, having first paid all the taxes on said block except the sum of forty-three cents, levied for the purpose of paying the interest upon the bonds issued by the county of Saline, under date of October 8, 1872, to the Cairo and Vincennes Railroad Company, appeared and filed objections to the entry of judgment against said block for that tax. The specific objections filed by the appellant were the following:

"*First*—The said bonds were issued by the said county of Saline without any warrant or authority of law.

"*Second*—The order for an election on the proposition that the county of Saline subscribe $100,000 to the capital stock of the Cairo and Vincennes Railroad, and in payment therefor issue the bonds of said county, made no provision for any notice of said election, and no notice of said election was given as required by law.

"*Third*—The said election was held without thirty days' previous notice thereof having been given, as required by law.

"*Fourth*—No subscription by or on behalf of the county of Saline was made to the capital stock of the Cairo and Vin-

cennes Railroad Company prior to the 2d day of July, 1870, or prior to the 8th day of August, 1870.

"*Fifth*—No order of the county court of Saline county for the making of said subscription was entered prior to the 2d day of July, 1870, or to the 8th day of August, 1870.

"*Sixth*—The only order made by the county court of Saline county for the making of said subscription was passed and entered on the 31st day of January, 1872.

"*Seventh*—The county court of Saline county, without authority of law, and without being thereunto authorized by a vote of the legal voters of said county, made a donation of $95,000 of the bonds of Saline county to the Cairo and Vincennes Railroad Company, the said $95,000 being the only bonds ever issued by said county to said railroad company, and to pay the interest upon which the tax now objected to was levied."

A trial being had before the court, evidence was introduced by the respective parties by way of sustaining and controverting said objections, and the court, after hearing said evidence, rendered a decision overruling said objections. A motion by the appellant for a new trial having been made and denied, judgment was rendered against said block for said tax, in the form prescribed by statute, and the appellant, having preserved proper exceptions to the said decisions and judgment, now brings the record to this court by appeal.

At said trial, the county collector read in evidence the assessment roll, showing that said block was assessed at $100; also, the equalized assessment of lots and lands in Saline county, made by the State Board of Equalization, showing that ten per cent should be deducted from the valuation of town and city lots; also, the Auditor's certificate of the rate to be levied for the year 1890 for the purpose of paying interest on registered bonds, and his certificate of the rate per cent of taxation for general State and school purposes; also the tax-book, with warrant attached, showing the extension of

taxes against said block, with the collector's memorandum that appellant had paid all of said taxes except forty-three cents levied to pay interest on the Cairo & Vincennes Railroad bonds; also, the return of the town collector showing said block to be delinquent; also, the collector's delinquent tax list as published and the collector's affidavit as required by law; and also the corrected list of lands and lots appearing on the tax judgment, sale, redemption and forfeiture record, showing the tax on said block to have been all paid except said forty-three cents, levied to pay the interest on said railroad bonds. With this evidence, the county collector rested his case.

The appellant thereupon called as a witness the county clerk of Saline county, who testified that said county had outstanding in registered bonds, in addition to $95,000 in bonds issued to the Cairo and Vincennes Railroad Company, $125,000 of bonds issued to other railroad companies; also that the tax in question was extended in accordance with the Auditor's certificate above mentioned. The appellant also testified in his own behalf to the payment of all taxes on said block for the year 1890, except that levied to pay interest on the Cairo & Vincennes Railroad bonds. Said county clerk also produced and identified the records of the proceedings of the County Court of said county at sessions held for the transaction of county business, and the appellant thereupon read in evidence an order of said County Court, entered September 3, 1867, as follows:

"Whereas, the Cairo and Vincennes Railroad Company has presented a petition this day, soliciting that a vote be taken by the people of Saline county to take stock in said company to the amount of $100,000;

"Therefore, it is hereby ordered by the court that an election be held in Saline county, Illinois, at the various voting precincts in said county, on the 5th day of October, A. D. 1867, upon the following questions, to-wit:

"*First*—That Saline county subscribe the sum of $100,000 to the capital stock of the Cairo and Vincennes Railroad Company.

"*Second*—That in payment of such subscription of $100,000 to the capital stock of said Cairo and Vincennes Railroad Company, that bonds of said Saline county be issued to said railroad company, in the denomination of $500 each, said bonds to bear interest at the rate of eight per cent per annum, payable half-yearly, in the city of New York, on the 1st day of January and July of each year, said bonds to run twenty years, redeemable at the option of the county court of said county, and the faith of the said county of Saline to be pledged for the payment of the principal and interest thereof.

"*Third*—Said bonds to be issued to said railroad company in payment of said $100,000 stock whenever the track of said Cairo and Vincennes railway shall be laid from either terminus of said road to a point within ten miles of the Saline county line, and cars shall have run on said track from either terminus of said road to said point. And that a tax not exceeding ten mills per dollar on each dollar's worth of all the taxable property of said Saline county shall be levied and collected to pay the interest and principal of said bonds when issued.

"It is further ordered by the court, that all of said questions be voted upon as one question, and all voters of Saline county who favor the adoption of said proposition shall have written or printed upon their ballots, 'For subscription to the Cairo and Vincennes Railroad Company,' and all voters of Saline county who oppose the adoption of said proposition shall have written or printed upon their ballots, 'Against subscription to the Cairo and Vincennes Railroad Company.'"

The appellant also read from said record of said County Court a proposition by the president of the Cairo & Vincennes Railroad Company, under date of September 31, 1867, which was ordered by said court to be received and spread upon the record, to the effect that, when said railroad was built, it

should pass through Saline county to the extent of twenty-six miles, more or less, and that the town of Harrisburg should be made a point on said road, said agreement to be void if the people of said county should fail to vote a subscription of $100,000 to the capital stock of said company on the 5th day of October, 1867.

The appellant also read from the records of said County Court the following order entered November 28, 1867, to-wit:

"On this day the petition of voters of Saline county, Illinois, was presented and filed with this court, praying the court to enter into a contract with the Cairo and Vincennes Railroad Company for the purpose of securing the early construction of said road, and the court having considered said petition, and also having examined and considered the contract which said Cairo and Vincennes Railroad Company presented to said court, and said court being fully advised in the premises, and being anxious to do all in its power to secure the construction of said railroad, has this day made and entered into a contract with the Cairo and Vincennes Railroad Company, and said contract has been signed by Moses P. McGhee, county judge, and William L. Mitchell, associate justice, for and on behalf of Saline county, Illinois, and attested by Thomas A. Jones, clerk of said court, and was executed by said Cairo and Vincennes Railroad Company by Green B. Raum, president of said company, said contract being made and executed in open court, and in the words and figures following, and entered as a matter of record as such, to-wit:

" 'This contract, made and entered into, by and between Moses P. McGhee, county judge, and William L. Mitchell, associate justice of the County Court of the county of Saline and State of Illinois, who act for and on behalf of Saline county, Illinois, parties of the first part, and the Cairo and Vincennes Railroad Company, party of the second part, Witnesseth: That, whereas, heretofore, to-wit, on the fifth day of October, 1867, by a vote of the electors of Saline county,

Illinois, at an election held in said county, the County Court of said county was authorized to make a subscription of $100,000 to the capital stock of said Cairo and Vincennes Railroad Company, and to pay for said stock in bonds of Saline county of the denomination of $500 each, the bonds to run for twenty years, and to bear interest at the rate of eight per cent per annum, payable half-yearly, on the first day of January and July of each year, in the city of New York, such subscription of stock to be made, and the bonds to be issued, whenever the track of said railroad shall be laid to a point within ten miles of the Saline county line from either terminus of said road and cars shall have run thereon.

" 'And, whereas, said railroad company proposes to guarantee the construction of said railroad to the town of Harrisburg, in Saline county, within three years from the date of this contract, and also to release the county of Saline from obligation to issue any part of said bonds until said railroad is built to the town of Harrisburg, and also to purchase of Saline county the stock of said company to be issued to said county upon the delivery of the county bonds aforesaid.

" 'It is therefore hereby stipulated and agreed, by and between the parties aforesaid, as follows:

" 'Article 1st. The party of the second part agrees to have the track of said railroad laid to the town of Harrisburg, in Saline county, and cars running thereon, from either terminus of said road, at the option of said company, within three years from this date.

" 'Article 2d. The party of the second part agrees, that, instead of the county of Saline issuing bonds in payment for stock when the track of said road shall have been laid to a point within ten miles of the Saline county line and cars shall run thereon, that the said county shall issue $50,000 of bonds as aforesaid and deliver the same to said company in payment for stock, when the track of said road shall have been laid and cars shall have run thereon from either terminus of said road

to the town of Harrisburg. And the said county shall issue $50,000 of said bonds and deliver the same to said company in payment for stock, when the track of said road shall have been laid and cars run thereon from either terminus of said road through Saline county.

" 'Article 3d. The party of the first part hereby agrees to issue $50,000 of bonds of Saline county in payment for $50,000 of the stock of the Cairo and Vincennes Railroad Company, and deliver said bonds to said company, whenever the railroad track of said company shall be laid from either terminus of said road and cars shall run thereon to the town of Harrisburg, in said county. And also to issue $50,000 of said bonds in payment for stock as aforesaid, and deliver the same to said company, whenever the railroad track of said company shall be laid from either terminus of said road through the county of Saline, and cars shall have run thereon.

· " 'Article 4th. And, whereas, it is of vast importance to the people of Saline county to secure the early construction of said railroad into and through said county, therefore, in consideration of the stipulations made by the party of the second part in articles 1st and 2d of this contract, and in consideration of the sum of $5000 to be paid by said party of the second part as hereinafter stated, the parties of the first part hereby agree, to sell and transfer to said party of the second part, the $100,000 stock in said railroad company to be issued to Saline county, Illinois, in payment for $100,000 county bonds, at and for the sum of $5000, as follows:

" 'When $50,000 of the stock of said company is issued to Saline county, the parties of the first part agree to transfer and assign the same to the party of the second part, on payment of $2500 in Saline county bonds. And when the other $50,000 of the stock of said company is issued as aforesaid, the parties of the first part agree to transfer and assign the same to the party of the second part, on payment of $2500 in Saline county bonds.

" 'This contract is issued in duplicate, and is made and signed by the parties of the first part on behalf of Saline county, Illinois, in open court, and attested by the clerk of said court, with the seal of said court attached, and is made a matter of record, and is executed in behalf of said Cairo and Vincennes Railroad Company by the president of said company.

" 'The whole done this 28th day of November, A. D. 1867, at Harrisburg, Saline county, Illinois.' "

(Then follow the signatures and seals of the parties executing said contract.)

The appellant then read in evidence an order of said County Court entered July 1, 1870, extending the time for the completion of said railroad by said company for the period of two years from that date, and the written assent of said company to said order. Also a further order of said court entered March 31, 1871, granting a further extension of the period for the completion of said railroad for the period of two years from August 1, 1871, and the assent of said company thereto.

Also the following order of said County Court entered January 31, 1872, to-wit:

"Ordered by the court that, whereas, the people of Saline county did, on the 5th day of October, A. D. 1867, vote by a legal majority in favor of a proposition to subscribe $100,000 to the capital stock of the Cairo and Vincennes Railroad Company: Now, therefore, for and in behalf of the said county of Saline, in the State of Illinois, the County Court of said county, in accordance with said vote, hereby subscribe one thousand shares of $100 each, to the capital stock of the Cairo and Vincennes Railroad Company, and agree to pay for the same in the sum of $100,000 of the bonds of said county, of the denomination of $500 each, bearing eight per cent interest per annum, payable semi-annually, on the first day of January and July of each year, in the city of New York, said bonds to run twenty years.

"Said bonds to be delivered to said railroad company in accordance with the provisions of a contract made and existing between said railroad company and Saline county, whereby said Saline county agreed to sell the $100,000 stock of said company received in payment for said bonds for the sum of $5000, in the bonds of said county.

"And it is declared and recognized that said railroad company have resumed work on their road in Saline county in accordance with the requisitions of the orders of this court." Said record also shows a written acceptance of said subscription by said railroad company.

Certain orders of said court adopting forms for the bonds and coupons proposed to be issued were then read in evidence. Also the following order of said court entered October 8, 1872, to-wit:

"Whereas, on the 5th day of October, 1867, by a vote of a majority of the electors of Saline county, the county court of said county was authorized to subscribe $100,000 to the capital stock of the Cairo and Vincennes Railroad Company, which subscription was afterwards made by said county court in due form of law; and whereas, by a contract made and executed by the county court of Saline county and the said railroad company, it has been agreed that said $100,000 of the capital stock of said company should be sold by said county to said railroad company for the sum of $5000 in said Saline county bonds, *thereby making a payment of $95,000 in Saline county bonds to said company as a donation;* and whereas, over ninety miles of track of said railroad is now laid, and cars have run thereon to Harrisburg, in Saline county; and whereas, the work on said railroad is rapidly approaching completion:

"Now, therefore, in order to enable the chief contractors on said railroad to hasten the work, it is hereby ordered by the court that $95,000 of the bonds of Saline county be issued to said railroad company, to be dated this date, numbered consecutively from 1 to 190, inclusive, signed by Moses P. McGhee,

county judge, countersigned by Thomas A. Jones, county clerk, with the seal of the county court of Saline county attached, and to be of the following tenor, to-wit:

" 'UNITED STATES OF AMERICA.

*Saline County Bond.*    No. . . . . .    *$500.00.*

COUNTY OF SALINE, STATE OF ILLINOIS.

" 'Know all men by these presents, that the county of Saline, in the State of Illinois, acknowledges itself indebted to the Cairo and Vincennes Railroad Company, or bearer, in the sum of $500, which sum the said county promises to pay said company, or bearer, in the city of New York, twenty years after date, with interest thereon from and after the 1st day of November, 1872, at the rate of eight per cent per annum, payable half-yearly, on the 1st days of January and July of each year, except the last coupon, which is payable with this bond on the presentation and surrender, at the place in the city of New York where the Treasurer of the State of Illinois pays the interest and debt of said State, of the coupons hereto attached. This bond is one of two hundred of like tenor and amount, of the same issue, and is issued pursuant to an order of the county court of said county, authorized by a majority of the legal votes cast at an election held in said county pursuant to law, on the 5th day of October, A. D. 1867. This bond is also issued under the provisions of an act to incorporate the Cairo and Vincennes Railroad Company, approved March 6, 1867, and under the provisions of an act to amend said act, approved February 9, 1869; also, under the provisions of an act entitled 'An act to fund and provide for the payment of the railroad debts of counties, townships, cities and towns,' approved April 16, 1869, and is in part payment of a subscription to the capital stock of the Cairo and Vincennes Railroad Company, in the total sum of $100,000.

" 'In testimony whereof, the said county of Saline has executed this bond, by the county judge of said county, under the order of the county court of said county, signing his name

thereto, and by the clerk of said court, under the order thereof, attesting the same and affixing the seal of said court thereto.

" 'This done at the office of the clerk of said court, this 8th day of October, A. D. 1872. [L. S.]'

"With coupons attached to said bonds for the interest that falls due from time to time. Said $95,000 of bonds to be delivered to said railroad company by Moses P. McGhee, county judge, for and on behalf of said county court. And it is further ordered and declared by the court, that all of said bonds were this day issued, signed, sealed and delivered in open court."

The county clerk of said county also testified that he had carefully examined all the records of his office pertaining to the issue of bonds to said railroad company, and was unable to find among the records and files of his office any petition by said railroad company, or by any other company or person, asking that a vote be taken to issue $100,000, or any other amount of bonds by said county to said railroad company, or any paper or record showing or indicating that any notice was ever given of any election held on the 5th day of October, 1867, or at any other time, in said county, on the question of issuing $100,000 in bonds or any other amount of bonds to said railroad company, either as a subscription for stock, or as a donation to said railroad company, by said county, and that there was no such paper on file in his office, and no such paper or record could be found.

The foregoing was all the evidence given at said trial.

Messrs. BOYER & CHOISSER, Messrs. PARRISH & PARRISH, and Mr. S. P. WHEELER, for the appellant:

The bonds of Saline county having been issued after the adoption of the constitution of 1870, it was incumbent upon the relator to affirmatively show that their issue was authorized by a vote of the people of Saline county, under existing

laws, prior to the adoption of the constitution.  *Williams* v. *People,* 132 Ill. 574, and cases therein cited.

The will of the voters must be expressed at an election legally held.  It is a necessary prerequisite to a legal election that notice thereof be given as required by law, and it was incumbent upon the relator to affirmatively show that notice of the election of October 5, 1867, was given as required by law. *People* v. *Jackson County,* 92 Ill. 441; *Williams* v. *People,* 132 id. 574.

The order of the county court calling the election is silent as to notice, but the election was held under the charter of the railway company.  2 Laws of 1867, p. 558, sec. 10.

It is well settled that when the special act authorizing an election upon the question of municipalities subscribing to the capital stock of railroad companies is silent on the subject of notice, the thirty days' notice required by the law of 1849 must be given.  Such was the holding of this court in *Harding* v. *Railroad Co.* 65 Ill. 90, and before the Saline county bonds were issued.

After the election of October 5, 1867, was had, the charter of the Cairo and Vincennes railroad was amended by an act of the General Assembly of this State, approved February 9, 1869.  (3 Sess. Laws of 1869, p. 259.)  In section 3 of this amendatory act it is provided as follows:  "And all orders for and notices of elections, and elections and returns of such elections, in respect to such subscriptions of stock to said company, in any such towns, cities and counties, are hereby declared to be valid and binding upon such towns, cities or counties."

This question is passed upon in the case (already referred to) of *Williams* v. *People.*  But there is an additional reason why this curative act should receive no consideration.  The election was held without any notice, and therefore was void. Any subscription made or bonds issued by virtue of such election are also void.  The attempt of the General Assembly,

therefore, was to make such void election "valid and binding upon such counties." I maintain that legislation of this character was prohibited by the constitution of 1848. Section 5, article 9, of the constitution of 1848, has repeatedly been held by this court to prohibit the General Assembly from creating municipal indebtedness, to be paid by taxation imposed upon the property in such municipalities. *Gaddis* v. *Richland County,* 92 Ill. 119.

Mr. A. W. LEWIS, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court :

There is no evidence in the record before us that the bonds issued by the county of Saline to the Cairo and Vincennes Railroad Company, or any of them, have been negotiated by said railroad company, or that there are any assignees of said bonds who occupy the position or are entitled to the rights of *bona fide* holders thereof for value. The evidence shows that bonds to the amount of $95,000 were, on the 8th day of October, 1872, issued and delivered by said county to said railroad company, but nothing whatever is shown as to what the railroad company has done with them. The only presumption arising from these facts is, that said bonds are still in the hands of the railroad company, and no question therefore is presented as to how far the alleged invalidity of said bonds would be affected by those conclusive presumptions which the law raises for the protection of *bona fide* holders of commercial paper.

Nor is there any allegation or proof of any facts arising since the execution of said bonds, such as have sometimes been held to work an estoppel upon a municipal corporation to question the validity of its bonds, though originally invalid. Nothing is before us except the mere question of the legality of these bonds as between the county and the railroad company, the original parties thereto.

The Cairo and Vincennes Railroad Company was incorpo-rated by a special act of the General Assembly, approved March 6, 1867, with authority to locate and construct a rail-road from the city of Cairo, in Alexander county, by way of Mound City in Pulaski county, to some point on the line between the States of Illinois and Indiana, at or near Vincennes. The only power conferred by said act upon municipal corporations to aid in the construction of said railroad is found in the tenth section of said act, which is as follows:

"§ 10. The several towns, cities or counties, through or near which said railroad shall pass, may subscribe for and take stock in this company, and may issue bonds in payment for such stock, of $500 each, bearing interest at the rate of eight per cent per annum, or less, payable half-yearly, in the city of New York, on the first days of January and July of each year, and bonds to run not longer than twenty-five years. And a tax of not more than one dollar on each hundred dollars' worth of taxable property, may be levied and collected in such town, city or county, per annum, to pay the installments on such stock, or to pay the interest and principal of bonds issued in payment of such stock: *Provided,* that no such subscription shall be made, no such bonds shall be issued, and no such tax shall be levied, unless a majority of the legal voters of said town, city or county, shall vote for the same, at an election to be held under order of the corporate authorities in cases of towns and cities, and of the County Court, in cases of counties: *Provided, further,* that a majority of legal voters at any such election, shall be held as a majority of the legal voters of any such town, city or county; and the questions, of making a subscription, issuing bonds, and levying taxes, may be submitted as one question, or as separate questions, at such election; and either or all of said questions may be submitted to an election at any time, in the discretion of the authorities authorized to call such election." Vol. 2, Private Laws of 1867, p. 558.

It will be observed that while by this section, power is given to counties, towns and cities to subscribe for shares in the capital stock of said railroad company, and pay therefor either in municipal bonds or in money raised by taxation, no power whatever is given to make donations to the railroad company of either money or bonds to aid in the construction of its railroad. The rule is well settled that these is no inherent power in municipal corporations to aid in the construction of railroads, either by becoming subscribers to the capital stock of the railroad company, or by making donations to such company of money or bonds, but such power can be given only by express legislative provision. *Board of Supervisors* v. *Farwell,* 25 Ill. 181; *Clarke* v. *Hancock County,* 27 id. 305; *Marshall County* v. *Cook,* 38 id. 44; *Wiley* v. *Silliman,* 62 id. 170; *Harding* v. *R., R. I. & St. L. R. R. Co.* 65 id. 90; *McWhorter* v. *The People,* id. 290; *Town of Big Grove* v. *Wells,* id. 263; *Lippincott* v. *Town of Pana,* 92 id. 24; *Pitzman* v. *Village of Freeburg,* id. 111; *Gaddis* v. *Richland County,* id. 119; *The People* v. *Jackson County,* id. 441; *Hewitt* v. *Normal School District,* 94 id. 528; *Schaeffer* v. *Bonham,* 95 id. 368.

The authority, when conferred, must be strictly pursued. *Hardin* v. *R., R. I. & St. L. R. R. Co. supra.* The power to aid in the building of a railroad by subscribing for a portion of the capital stock of such company, is essentially different in its nature from the power to aid in such enterprise by making a donation to such company, and the former power neither includes nor implies the latter. *Macoupin County* v. *The People,* 58 Ill. 191.

In this case the undisputed evidence is, that on the 5th day of October, 1867, the proposition to subscribe for $100,000 of the capital stock of said railroad company was submitted to the legal voters of Saline county, at a special election called therefor by the County Court of said county, and that the majority of the votes cast at said election were in favor of that proposition; that on the 28th day of November following, said

County Court, claiming to act upon the authority given it by said election and its result, entered into a contract with said railroad company, by which it was agreed that said County Court, acting on behalf of said county, should issue $100,000 of the bonds of the county in payment for that amount of the capital stock of said company, but that at the same time and as a part of the same transaction, said stock should be sold back and returned to said railroad company for the nominal sum of $5000, payable by the redelivery to the county of that amount of said county bonds. By this maneuver the proposition submitted to the vote of the people of the county, viz; to subscribe for and receive $100,000 of the capital stock of said railroad company as the consideration for $100,000 of county bonds, became virtually changed into a proposition to donate $95,000 of the bonds of the county to the railroad company without consideration. That such was the understanding of the parties themselves is manifest from the fact that, when the bonds came to be finally issued, the record of their issue made by the County Court, recited that it had been agreed that the $100,000 of capital stock of the railroad company should be sold back to the company for $5000 in county bonds, "thereby making a payment of $95,000 of Saline county bonds to said company as a donation," and from the further fact that, at the final consummation of the transaction, it does not appear to have been deemed necessary by the parties to go through with the form of issuing the $100,000 shares of stock to the county, and buying them back by handing back to the county $5000 of county bonds. These trifling formalities seem to have been omitted, the entire transaction having been limited to the delivery by the county authorities to the railroad company of $95,000 of county bonds.

That in its consummation if not in its inception the transaction was a donation pure and simple is too plain to admit of serious controversy. In the beginning and until the election was had, the guise of a subscription was resorted to so as to

bring the municipal aid sought to be obtained apparently at least within the power conferred upon the county by the tenth section of the railroad company's charter. But when viewed in the light of the interpretation put upon the transaction by the subsequent acts of the parties, it appears too transparent to mislead. The bonds being essentially a donation, it was not within the power of the County Court to issue them, and they must therefore be held to be *ultra vires* and void.

But it is urged that the invalidity of said donation was cured by the third section of the act to amend the charter of said railroad company, approved February 9, 1869. That section is as follows :

"§ 3. That all contracts made by towns, cities and counties, into, through or near which the Cairo and Vincennes Railroad shall run, whereby, as an inducement to the construction of said railroad, such towns, cities and counties agreed, upon the completion of certain portions of said railroad, to sell to the said company, at a nominal price, the stock of said company for which such towns, cities or counties, by a vote of their electors, had theretofore subscribed, and agreed to issue bonds in payment thereof, thereby, in effect, agreeing to make a donation to said company of certain amounts of bonds of such towns, cities or counties, as an inducement to the construction of said railroad, are hereby declared to be valid and binding upon such towns, cities and counties, and shall be carried into effect in good faith, by the same; and all orders for and notices of elections, and elections and returns of such elections, in respect to such subscriptions of stock to said company, in any such towns, cities and counties, are hereby declared to be valid and binding upon such towns, cities and counties." Vol. 3, Private Laws, 1869, p. 259.

Here is a clear attempt by the General Assembly to impose upon Saline county an obligation which it had never assumed, and for which no valid contract was in existence. The only proposition which had been submitted to the vote of the people.

of the county, and the only proposition which, under existing laws, the County Court had power to submit to them, was that of making a subscription to the capital stock of the railroad company, the stock to be received as the consideration, and, presumably, the equivalent, for the county bonds to be issued in pursuance of the subscription. The proposition to donate $95,000 in county bonds to said railroad company was never submitted to the people of said county, was never voted upon by them, and could not, under then existing laws, have been submitted to such vote. The subsequent contract entered into by the County Court to sell back the stock subscribed for a nominal consideration, so as to effectually transmute the proposition to subscribe $100,000 to the capital stock of said company, to which the people of the county had given their assent, into a proposition to donate to the railroad company $95,000 of county bonds, to which the people of the county had not and could not have given their assent, was clearly void, so as to confer no rights and impose no obligations. The question then is, whether, even independently of the provisions of the Constitution of 1870, the General Assembly had the power, to validate a contract which was utterly void, and thus impose upon the county an indebtedness to which it had never assented, and to which, prior to said amendatory statute, it had no power to assent.

It was at one time a matter of grave controversy among courts of the highest respectability, whether furnishing aid to the building of railroads was so far a corporate purpose that a municipal corporation could, even in pursuance of express legislative authority, lawfully issue its bonds or incur indebtedness in furtherance of such purpose. And while there is now a substantial agreement among the courts of the country, that aid to railroad building is so far a corporate purpose, that municipal corporations may, when there is no adverse constitutional limitation, after being expressly authorized by the Legislature so to do, in the exercise of its own discretion,

subscribe for stock in a contemplated railroad, or make a donation to aid in constructing it, it has never been held, we think, to be within the power of the Legislature, to compel a municipal corporation, without its own consent legally expressed, to enter into or assume obligations of this character.

In the present case, the amendatory act of 1869, if effectual at all, can be held to operate only by way of validating a contract for a donation, which, by reason of want of power, as well as the absence of either an intention or opportunity on the part of the legal voters of the county to give their assent to it, was *ultra vires* and void. Declaring such void contract to be valid and binding, and providing that it should be carried into effect in good faith, as said amendatory act undertook to do, was an attempt to impose upon the county an obligation in aid of a railroad, without its own consent expressed in any legal form.

In *Marshall* v. *Silliman*, 61 Ill. 218, which was a bill to restrain a railroad company from negotiating certain township bonds issued to it in payment of a subscription by the township to its capital stock, and to enjoin the collection of a tax levied for the payment of the interest thereon, and where it appeared that the township had voted in favor of a subscription of $15,000 in excess of the sum which by the charter of the company, as it then stood, a township was authorized to subscribe, and that the Legislature subsequently amended said charter increasing the amount which a township might subscribe, so as to make it cover said $15,000, and also passed a special act confirming and legalizing the $15,000 subscription, and declaring it to be binding upon the township, this court, in stating the question presented, said: "This law, if valid, had the effect of creating a debt of $15,000 against the township. It declares that the subscription is binding, and may be collected from the township in the same manner as if it had been legally made. But before the passage of this act, it was not binding, and could not be collected. If it is now

binding, it became so for the first time at the passage of this law, and is so solely by force of the law. The question then, whether the subscription is binding, does not depend merely upon whether the legislature can pass a retrospective law, but upon whether it can create a debt against a town, and require the town to assess a tax for its payment." After discussing this question somewhat at length, the court, in conclusion, said:

"Our conclusion is, that the so-called curative act was a violation of the Constitution. Its object was to compel this town to issue its bonds for railroad stock independently of its own wishes, and this was beyond the limits of its legislative power. It sought to accomplish this by declaring that a void proceeding was a valid one; that a vote confessedly illegal was in fact legal. But this vote was an accomplished fact. Whether it was within the corporate powers of the town and binding upon its people was a question which no subsequent legislation could affect; and when the Legislature undertook to say that this vote created a valid obligation against the town, when it did not, it was attempting, by its own act, to create a corporate debt." See also *Wiley* v. *Silliman,* 62 Ill. 170; *Barnes* v. *Town of Lacon,* 84 id. 461; *C. & St. L. R. R. Co.* v. *City of Sparta,* 77 id. 505.

But the case of the bonds under consideration here presents still further difficulties when considered in the light of the following provision of the Constitution of 1870:

"No county, city, town, township or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however,* that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities, prior to such adoption."

The proviso in this section seems to apply only to "subscriptions," but if it be admitted that this word as here used, is sufficiently broad to include "donations" as well, it is clear that there are excepted from the constitutional prohibition only such donations as had been authorized by a vote of the people of the municipality prior to the adoption of the Constitution. All others are absolutely prohibited. As said in *Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562, and repeated in substance in *People* v. *Jackson County*, 92 id. 441: "The obligations assumed under existing laws can not, since the adoption of the Constitution, be enlarged or materially changed, either by the action of the people of the township, or its corporate authorities. All power is taken away, and the utmost that can be done is, to make and complete the subscription or donation previously voted under then existing laws, upon the same terms and conditions as voted. Subscriptions or donations upon other terms would obviously require new consent on the part of the people of the municipality, which can not be done for want of power."

The bonds in question were not issued until considerably more than one year after the Constitution was adopted, and as the proposition to make a donation to said railroad company was never submitted to a vote of the people of Saline county, it is impossible to see how such donation can be held to be within the terms of the proviso or exception in said section of the Constitution. At the time the bonds were issued, nothing remained to be done but to carry out the terms of the subscription precisely as it was submitted to the vote of the people at said election. This, however, was not done nor attempted to be done, but instead of it, an entirely different transaction, viz., a donation out and out of $95,000 of the bonds of the county was substituted, thus bringing the case clearly within the constitutional prohibition.

The validity of said bonds is also assailed upon the further ground, that it does not appear that any notice was given of

the election held upon the proposition to subscribe $100,000 to the capital stock of said railroad company. Said election was a special one, called by the County Court, to enable the people of the county to vote for or against said proposition, and there is no direct evidence in the record that any notice of said election was given.

The tenth section of the charter of said railroad company provided for the submission of the question of subscription to the legal voters of the county at an election to be called by the proper county authorities, but it made no provision as to how the election should be conducted, or as to what notice of it should be given. Under these circumstances we think there can be no doubt that the Legislature intended that the general law in relation to elections should apply, and that the notice prescribed by that law in cases of special elections should be given. In order to a valid election, the giving of such notice was necessary, and if none was given, the election was invalid.

Whatever may be the rule in case of bonds issued prior to the adoption of the Constitution, the rule seems to be well settled, that, where bonds have been issued since its adoption, all presumptions are against them, so as to throw upon those asserting their validity, the burden of proving the legality of the election authorizing their issue. *Town of Prairie* v. *Lloyd,* 97 Ill. 179; *People* v. *Jackson County,* 92 id. 441; *Middleport* v. *Ætna Ins. Co.* 82 id. 562; *Williams* v. *The People,* 132 id. 574.

Not only is there no direct evidence that notice of said election was given, but the county clerk, who is the official custodian of the records of the County Court, testifies that he has carefully examined the records of his office pertaining to the issue of said bonds, and is unable to find any paper or record showing or indicating that any notice of said election was ever given, and that there is no such paper or record in his office. The absence from the files and records of the county of all evidence tending to show that notice of the election was given,

is a strong circumstance bearing upon that question. It may also be observed that the record before us discloses no finding or recital in any order of the County Court that notice of said election had been given, or even, in general terms, that the election was held in pursuance of law. The only item of evidence upon which reliance is placed as tending to show notice, is a recital in the form of bond copied into the order of October 8, 1872, and which by that order was authorized to be issued, to the effect that the bond, and the others of the same series, "were authorized by a majority of the legal votes cast at an election held in said county, in pursuance of law, on the 5th day of October, 1867."

There is no finding by the court of the truth of this recital, so that even if the court, after the adoption of the present Constitution, was competent to make a finding which should be binding upon the county, it is not shown that it made any such finding.

As the burden of proof upon the issue of notice was upon the party asserting the validity of the bonds in question, we are of the opinion that, upon the evidence in this record, that issue should have been found in favor of the appellant. It follows from this, as well as from the reason first above given, that the judgment of the County Court of Saline county giving judgment against the appellant's land for the tax levied to pay the interest on said bonds, must be reversed. The cause will be remanded to that court for further proceedings.

*Judgment reversed.*