### UNITED STATES ex rel. PALEAIS v. MOORE, U. S. Marshal.*

(Circuit Court of Appeals, Second Circuit. November 12, 1923.)

No. 62.

1. **Habeas corpus ⚖︎3—Order adjudging bankrupt in contempt reviewable by petition to revise, and not by habeas corpus.**

   An order adjudging a bankrupt in contempt was reviewable under Bankruptcy Act, § 24b (Comp. St. § 9608), only by petition to revise, and could not be reviewed by habeas corpus.

2. **Habeas corpus ⚖︎113(12)—Correctness of conclusions of lower court not reviewable.**

   In habeas corpus proceeding, the appellate court examines only the power and authority of the lower court to act, and not the correctness of its conclusions.

3. **Habeas corpus ⚖︎30(1)—Errors and irregularities not reviewable.**

   An order restraining one of his liberty cannot be attacked in habeas corpus proceedings for errors and irregularities not affecting the jurisdiction.

⚖︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 331, 68 L. Ed. ——.

4. **Habeas corpus ⬄113(12)—On habeas corpus by bankrupt, adjudged in contempt, only jurisdiction of lower court can be reviewed.**

On appeal from order dismissing habeas corpus by a bankrupt, adjudged in contempt for failing to obey order to turn over books and papers, *held*, that the only matter which could be considered was the lower court's jurisdiction at the time it made the order adjudging the bankrupt in contempt, and directing his confinement until he purged himself of such contempt, or until further order of court.

5. **Bankruptcy ⬄136(2)—Form of order in contempt proceedings stated.**

When the bankruptcy court requires the bankrupt to turn over books and papers, and to stand committed until the order has been complied with, the court should be satisfied of the present ability to comply with the order, and such order should not be entered, where, because of loss of books and papers, it directs the confinement of the bankrupt until he performs an impossible thing.

6. **Contempt ⬄30—Power should be cautiously exercised.**

The power to punish for contempt, being far-reaching and drastic, should always be exercised cautiously, and with due regard to constitutional rights.

7. **Bankruptcy ⬄136(2)—As respects bankrupt's contempt in failing to turn over books and papers, original possession may overcome denial of present possession.**

As respects bankrupt's liability for contempt in failing to turn over his books and papers as ordered, the bankrupt's denial that he has possession thereof may be overcome by such evidence as is deducible from his original possession of such books, and the circumstances, even on his own testimony, concerning their loss or disappearance, in view of the presumption of continued possession, and the burden is on him satisfactorily to account for them, and he cannot escape an order for their surrender by simply denying under oath that he no longer has them.

8. **Contempt ⬄72—Fixed term of imprisonment justifiable only in criminal contempt proceeding.**

A sentence with a fixed and absolute term of imprisonment can be justified only when inflicted in a proceeding for criminal contempt.

Appeal from the District Court of the United States for the Eastern District of New York.

Habeas corpus by the United States, on the relation of Adolph Paleais, against Jesse D. Moore, United States Marshal for the Eastern District of New York, or other person having charge, custody, or control of the body of Adolph Paleais. From a judgment dismissing the writ (287 Fed. 879), relator appeals. Affirmed.

See, also, 287 Fed. 1022.

Joseph G. M. Browne and Barnett E. Kopelman, both of New York City, for appellant.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (William A. De Groot, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellee.

Robert P. Lewis, of New York City (David B. Tolins, of New York City, of counsel), for trustee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This is an appeal by the relator from an order made on April 23, 1923, which dismissed a writ of habeas corpus. It appears that on July 21, 1922, a petition was filed in the District Court for the Eastern District of New York, praying that Adolph

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Paleais, the relator herein, be adjudged an involuntary bankrupt. Thereafter, and on August 12, 1922, the petitioner was adjudged an involuntary bankrupt. It also appears that subsequently a receiver was appointed in the bankruptcy proceeding, and thereafter, upon the application of the receiver so appointed an order was obtained requiring the bankrupt, the relator herein, to show cause why an order should not be made directing him to deliver forthwith to the receiver certain of his books and papers.

The bankrupt appeared at the hearing and opposed the application, explaining in his affidavit, submitted in opposition to the motion, that the said books and papers so sought to be obtained by said motion had been left in an automobile by petitioner, and that said automobile had been stolen, together with the books placed therein, and with other personal property of petitioner, and that the said automobile had subsequently been recovered by the police department of the city of New York, but that the said books and papers, and certain other personal property of your petitioner, which were in the said automobile were missing.

It appears that as a result of this hearing an order was entered on October 3, 1922, in the District Court for the Eastern District of New York, which directed that Adolph Paleais, a bankrupt, turn over to the receiver his assets and effects, his cash book, ledger, check book, bill books, note books, canceled vouchers and unpaid bills, on or before 4 p. m. of October 6, 1922. From this order requiring the bankrupt to turn over his books and papers as above mentioned the bankrupt brought the matter into this court on a petition to revise, and the order was affirmed without opinion. 287 Fed. 1022.

On March 8, 1923, the trustee of the bankrupt's estate applied to the District Court for an order requiring the petitioner to show cause why he should not be adjudged in contempt of that court for failing to obey the terms of the order of October 3, 1922, or, in default thereof, why he should not be committed to the Raymond Street Jail, to be there detained until he complied with the terms of the order. It is to be noted that the order to turn over was one which in terms required him to turn over to the receiver, who had applied for and obtained the order. The motion to punish for contempt was made by the trustee, who had been appointed as such in the interval between the making of the turn-over order and its affirmance by this court. The petition to punish for contempt set up all the facts, and the failure of the relator to turn over the books and papers, either to the receiver or to the trustee.

Great stress is laid by the relator upon the fact that the order, for disobedience of which the relator is being confined in jail, required the relator to turn the books over to the *receiver*, and that that order is not binding upon the relator, as at the time he was adjudged in contempt the receiver was functus officio, because of the appointment of the trustee. In the view we take of this case, we do not need to consider the question thus sought to be brought here. This case is here to review the action taken by the District Court in dismissing a writ of habeas corpus. The appeal is from the order of April 23, 1923, which dismissed the writ of habeas corpus. The record discloses that the bank-

rupt was adjudged on March 22, 1923, to be in contempt of the District Court for his failure to comply with the order of October 3, 1922, made by that court, and that since April 11, 1923, he has been deprived of his liberty because of the contempt of which he was adjudged guilty; and we are asked in this proceeding to determine that in the order of April 11, 1923, the court erred in its judgment of the law applicable to the case. That is the sole question which is here upon this appeal.

[1] In determining this question we do not sit to review the order of October 3, 1922, directing the relator to turn over the books and papers, or the order adjudging him in contempt on March 22, 1923. If the order of March 22, 1923, adjudging the relator to be in contempt, was erroneous, the remedy for a review of the validity of that order was by a petition to revise it. That order was made in a proceeding in bankruptcy within the meaning of section 24b of the Bankruptcy Act (Comp. St. § 9608), which gives to this court jurisdiction to revise in matter of law "the proceedings of the several inferior courts of bankruptcy" within our jurisdiction; and the order cannot be brought here for examination in any other way than by petition to revise. In the case of In re Shidlovsky, 224 Fed. 450, 140 C. C. A. 654, this court held that in such cases the only remedy is by petition to revise under section 24b. In Kirsner v. Taliaferro, 202 Fed. 51, 120 C. C. A. 305, the Circuit Court of Appeals for the Fourth Circuit held that an order requiring a bankrupt to turn over property to his trustee, and committing him until he does so, is reviewable only by petition to revise. See, also, Freed v. Central Trust Co., 215 Fed. 873, 875, 132 C. C. A. 7; Henkin v. Fousek (C. C. A.) 267 Fed. 557; Horton v. Mendelsohn, 249 Fed. 185, 161 C. C. A. 221; Henkin v. Fousek, 246 Fed. 285, 159 C. C. A. 15; Good v. Kane, 211 Fed. 956, 128 C. C. A. 454. We are not aware of any case which asserts a contrary doctrine.

[2-4] This court recently, in Ex parte Craig, 282 Fed. 138, had occasion to consider at great length the right to employ the writ of habeas corpus as a method of examining into the validity of an order adjudging one guilty of a contempt of court and restraining him of his liberty as a punishment therefor. The conclusion to which we arrived in that case, and which we believe is amply sustained by the authorities, is that in a habeas corpus proceeding the appellate court examines only the power and authority of the lower court to act and not the correctness of its conclusions. The order restraining one of his liberty cannot be collaterally attacked in habeas corpus proceedings for errors and irregularities not affecting the jurisdiction. Adhering as we do to the doctrine therein announced, we hold that the only matter which can now be considered is the matter of the lower court's jurisdiction at the time it made the order adjudging the relator in contempt, and directing his confinement in the Raymond Street Jail until he purged himself of such contempt, or until the further order of the court. Since this opinion was handed down, this court's decision in the case of Ex parte Craig, 282 Fed. 138, has been affirmed by the Supreme Court of the United States. Craig v. Hecht, 44 Sup. Ct. 103, 68 L. Ed. ——.

It is upon this record clearly disclosed that the court had jurisdiction of the subject-matter and of the person of this relator. The court

has jurisdiction of bankruptcy matters, and the order was made in a proceeding in bankruptcy. It is also disclosed that the bankrupt participated in the proceedings from time to time in the bankruptcy court, being represented therein by counsel. As the District Court had jurisdiction of the person of Paleais, appellant herein, and jurisdiction of the subject-matter, and authority to enter the order appealed from, we have no right, upon this appeal, to inquire further into the exercise of its jurisdiction. If error was committed, the law afforded a remedy; but that remedy was not by habeas corpus.

[5] Before concluding this opinion, we may perhaps properly call the attention of the court below to the form of the order of March 22, 1923. That order adjudged Paleais guilty of contempt, and committed him to jail, to be there confined and detained until he shall have purged himself of such contempt. When a court makes an order requiring one to turn over books and papers, and to stand committed *until* the order has been complied with, the court should be satisfied of the present ability of the bankrupt to comply with it. It is quite possible that it was within the power of the bankrupt to turn over his books and papers, which were in his possession at the time when the original turn-over order of October 3, 1922, was made, but that he had thereafter so dealt with them as to make it impossible for him to turn them over. The bankrupt, however, swears that before the order of October 3, 1922, was made, the books and papers had been stolen along with his automobile, and that he therefore has not been able to comply with the order at any time since it was made. If his story is true—and whether it is or not we express no opinion—it is clear that no such order as that of March 22, 1923, should have been entered, as it directs the confinement of the bankrupt until he performs an impossible thing. The form of the order is unobjectionable, so long as the books and papers are in the bankrupt's possession or under his control. But when he no longer has them in his possession or under his control, the order should be changed, and he should be subject to punishment for his disobedience of the order. It is, of course, quite within the power of the District Court to modify its order of March 22, 1923, if it is found necessary to do it, as by its own terms the bankrupt was to be confined in jail until he purged himself of the contempt, "or until the further orders of this court." In what has been said we do not desire to be understood as intimating it as our opinion that the facts of this case make a modification of the order at the present time desirable or proper. That depends upon facts, concerning which we are not sufficiently informed.

[6] The power to punish for contempt is, however, "far-reaching and drastic," and is always to be exercised with a due regard to constitutional rights. Samel v. Dodd, 142 Fed. 68, 73 C. C. A. 254. In Collier on Bankruptcy (12th Ed.) p. 59, it is said:

"The power of commitment should be cautiously exercised, and only when its propriety is beyond a reasonable doubt; it should appear from the facts in the case that there has been a willful disobedience of the order. * * * There should be clear and convincing proof, amounting at least to a fair preponderance of evidence, that the person charged with the contempt is guilty thereof."

And it has been held in a number of cases that, where the bankrupt denies that he has the property in his possession, his denial must be overcome by evidence proving beyond a reasonable doubt that he actually has the present possession or control of the property, or that any alleged transfer or other disposition of it is a mere subterfuge, which does not prevent him from producing it. Ripon Knitting Works v. Schreiber (D. C.) 101 Fed. 810; In re Purvine, 96 Fed. 192, 37 C. C. A. 446; In re Adler (D. C.) 129 Fed. 502; Stuart v. Reynolds, 204 Fed. 709, 123 C. C. A. 13. This court, in Re D. Levy & Co., 142 Fed. 442, 444, 73 C. C. A. 558, 560, said:

"We are not unmindful of the general rule that the power to imprison for contempt in such cases should be exercised with great caution, and only upon proof which establishes the facts found beyond a reasonable doubt, or which must, in any event, be clear and convincing."

[7] The evidence to overcome the denial, however, may be such as is deducible from the bankrupt's original possession of the books and the circumstances, even on his own testimony concerning their loss or disappearance. If, at the time the turn-over order was made, the books and papers were in the bankrupt's hands, the presumption is that they continued to be in his possession or under his control until he has satisfactorily accounted to the court of bankruptcy for their subsequent disposition or disappearance. The burden is upon him satisfactorily to so account for them. He cannot escape an order for their surrender by simply denying under oath that he no longer has them. This is in accordance with the rule that the proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference that it exists at a subsequent time. Lazarus v. Phelps, 156 U. S. 202, 15 Sup. Ct. 271, 39 L. Ed. 397; Bayard v. Colefax, 3 Fed. Cas. No. 1,130; In re Meier, 182 Fed. 799, 105 C. C. A. 231; Kirsner v. Taliaferro, 202 Fed. 51, 58, 120 C. C. A. 305; Hingham v. South Scituate, 7 Gray (Mass.) 229; Gray v. Finch, 23 Conn. 495, 513; Choisser v. People, 140 Ill. 21, 29 N. E. 546.

[8] This court had occasion in 1913 to refer to the matter of punishment in contempt cases in Re Kahn, 204 Fed. 581, 123 C. C. A. 107. We then pointed out that in Gompers v. Buck's Stove Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, decided two years earlier, the Supreme Court had stated the distinction between the character and purpose of punishment in civil contempts and those in criminal contempts. We expressed the opinion that the classification of contempts and contempt proceedings made by the Supreme Court in the Gompers Case is general in its application, and applies as well in cases arising in bankruptcy proceedings as in other cases. The order in that case adjudged the alleged bankrupt guilty of contempt of court in having willfully and deliberately neglected to give proper testimony on behalf of the receiver, and particularly for giving the testimony set forth in the petition; and the order directed him to be imprisoned for a definite period, to wit, 10 days. This court declared it evident "that, when it appears that a sentence to a fixed and absolute term of imprisonment has been imposed, it can be justified only by showing that it was inflicted in a proceeding for criminal contempt." Such a punishment was imposed in this case.

"* * * Nothing the defendant could have done would have prevented his imprisonment for the full term of 10 days. That part of the punishment was to vindicate the authority of the court. The coercive part—the part to aid the complainant—did not become operative until after the punitive part had been complied with. The latter must be supported, if at all, by establishing that it was made in a criminal proceeding."

This court in that case held that there was error in the order made, and reversed it, but without prejudice to further proceedings in the District Court. This went upon the theory that the punishment imposed was appropriate only to a proceeding at law for criminal contempt.

In Kirsner v. Taliferro, 202 Fed. 51, 120 C. C. A. 305, the Circuit Court of Appeals in the Fourth Circuit in 1912 had the question of an order before it which directed the bankrupt to be imprisoned until he complied with the turn-over order. The court declared that such an order was error if, after the original turn-over order was made, the bankrupt had so dealt with the property as to make it impossible for him to do so. "In such case," the court declared, "no such order as that passed below could properly be made against him, but for all that he might well be subject to punishment for the contempt of which he had been guilty. That punishment would take the form of a fine of a definite amount or a committal to prison for a term of fixed duration." If these cases are in conflict, as they appear to be, this court adheres to its decision in Re Kahn.

The order appealed from, which dismissed the writ of habeas corpus, is affirmed.

MANTON, Circuit Judge, concurs in the result.