## Case No. 1,130.
### BAYARD v. COLEFAX et al.
[4 Wash. C. C. 38.] [1]

Circuit Court, D. New Jersey. April Term, 1820.

TRUSTS—ABUSE OF TRUST—REMEDY—EJECTMENT —PLEADING—PARTIES.

1. By the conveyance of the trustee in 1770, under whom the plaintiff claims the legal estate, the possession passed to him in like manner as if he had actually entered; and having been once in him, the law presumes it to have continued until a dispossession is shown.

2. The plaintiff is one of the cestui que trusts among whom the trustee made partition, and by deed conveyed the legal estate of the plaintiff's share to him. It does not lie with the defendant, who has no title, to question the conduct of the trustee. The trustee had a legal right to pass the legal estate to the plaintiff, and he has done so, which is a sufficient title in ejectment. If the trustee has abused his trust, he may be called upon to account for it by those who have been injured, in a court of equity, but not in a court of law, which can only notice legal titles.

3. The correct rule relative to joining parties in ejectment, is stated in 5 Johns. 278; that when two or more persons, holding separate and distinct possessions of the land sued for, are united in the same declaration, jointly enter into the same common rule. and plead jointly, judgment may be given against them separately, if their separate possessions are found by the jury; and there is no difference whether the separate possession of each defendant is found by the jury, or stated in the demurrer to evidence.

[Cited in Gibbons v. Martin, Case No. 5,381.]

At law. Ejectment [by the lessee of Bayard against Colefax and Schuyler] for a part of a certain tract of land lying in the county of Morris, called the Bog or Fly meadow. The cause came before the court upon a de-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

murrer to the evidence, taken by the defendants, and joined by the lessor of the plaintiff. [Judgment for plaintiff.]

The facts stated in the demurrer are as follows:

The heirs and legal representatives of Anthony Brockholst, Aarent Schuyler, and Nicholas Bayard, who had died-seised of the above tract of land, each entitled to one equal third part thereof, in common; finding it inconvenient, if not impossible, on account of their number, to settle and adjust various disputes which had arisen with persons who had taken possession of, and claimed title to parts of the said tract of land, deemed it best, (as the recital in the deed states) to vest the legal title to this land in certain trustees, to enable them to commence and prosecute suits for the recovery of the same. They accordingly executed a deed, bearing date the 26th of September 1770, whereby they conveyed the whole of the same bog to three trustees, and to the survivor of them in fee simple. This deed having by some means been lost, or destroyed, the demurrer states that its contents are set forth in the recital, in an act of the legislature of New Jersey, passed on the first of June 1786, [Sess. Laws, 320,] upon the petition of the cestui que trusts in the said deed, or a large majority of them in number and value; which prayed that the legislature would invest the trustees named in the said deed with additional powers, and would vest the title to the said bog, as far as the same was originally vested in Brockholst, Schuyler, and Bayard, in the said trustees in fee simple, for the purposes mentioned in the said deed of 1770, and for the further purpose of reclaiming, dividing and making partition of the property amongst those who should appear to be entitled to the same under the original owners. The act is in strict conformity with the petition.[2]

Ejectments were brought by the trustees against the intruders on the above land, and the boundaries of the bog were particularly ascertained and settled by a report of the referees, which was confirmed by a judgment of the court sometime in the year 1794. By another act of the legislature, dated the 28th of February 1806, [Sess. Laws, 597,] passed upon the application of the representatives of Henry Brockholst, one of the sons of the above mentioned Anthony Brockholst, all the estate whereof the said Henry died seised was vested in certain trustees, in trust to divide the same, or to sell it and distribute the proceeds amongst the devisees of the said Henry, and their legal representatives. These trustees took possession of two thirds of the bog, being, as they supposed, the right of the said Henry Brockholst, as the share of Anthony Brockholst, and another third, as the share of Nicholas Bayard, which they supposed had been conveyed by him to Anthony Brockholst. In point of fact, Henry Brockholst was entitled to only one fifth of the one third part which had belonged to his father, and the trustees were mistaken in supposing that Bayard's part had been conveyed by him to A. Brockholst. Acting however under this mistake, those trustees sold two third parts of the said land in the years 1809 and 1810, and upon the petition of the purchasers under those sales, the legislature, on the 18th of February 1813, passed an act to repeal the aforesaid act of 1786, and making certain provisions as to the money received by the trustees upon the above sales. Elias Boudinot, the surviving trustee under the deed of 1770, after due notice given in the public papers, proceeded to make partition of the bog, (except the part laid off for the payment of the costs and expenses,) amongst the legal representatives of the three original proprietors, allotting, by metes and bounds, one third part thereof to the representatives of each; and Stephen N. Bayard, the lessor of the plaintiff, being entitled in his own right, as one of the representatives of Nicholas Bayard, and as assignee of others of the said representatives of the said Nicholas Bayard to the quantity of two hundred and forty-four acres, Mr. Boudinot, by deed dated the 15th of September 1818, conveyed to him, in fee simple, the above mentioned quantity, by metes and bounds. This deed recites the trust deed of 1770; and the act of 1786; by virtue of which two instruments, the deed states, the said Boudinot and his co-trustees in their life

---

[2] The first section of this act vests in the trustees named in the deed of 1770, in fee simple, all the right and title of the original proprietors to this bog, and declares that the title of the said original proprietors shall be taken, and admitted in all courts of law and equity, as vested in the said trustees, subject, however, to the conditions, trusts and directions afterwards mentioned. The second section directs the trustees, as soon as might be, to ascertain according to due course of law, by compromise or arbitration, the boundaries of the bog, and to cause the same to be marked. The third section declares that it shall be lawful for the trustees to cause the said bog to be drained in such manner as they may judge most beneficial for its improvement, the expenses whereof, having been audited and allowed by the chief justice of the state, were to be a lien on the said land. The fourth section enacts that after the said charges have been so audited and allowed, the trustees should lay off so much of the said bog, as in their opinion would be sufficient for satisfying and paying all such charges and expenses, as well as such that might attend the partition of the property as thereafter mentioned, and thereupon the trustees are directed to sell the part so laid off, for defraying the said charges, &c. and after paying the same to divide the residue of the purchase money, if any, amongst those entitled to partition of the remaining part of the bog. The fifth section declares that thereupon the trustees shall proceed to examine into, and ascertain the title of each person claiming any part of said bog, under the original proprietors, and to make a just partition of the same among the claimants according to equity and justice, and to execute deeds to the several claimants for their respective shares so adjudged and determined by the trustees.

time, were seised of the said bog as joint tenants. The demurrer to evidence further states, that the above deed to the lessor of the plaintiff, comprehends the premises in dispute; and that, at the time of the service of the declaration in ejectment in this action, the defendant Schuyler was in possession of part of the premises in dispute, holding the same by himself in severalty; and that Colefax, the other defendant, was in possession of another part of the premises, holding the same by himself and in severalty.

In support of the demurrer, it was contended by Ewing and Wall, for the defendants, that the plaintiff cannot recover:

1. Because it is not stated in the demurrer that the lessor of the plaintiff or those under whom he claims, was in possession of the premises within twenty years prior to the bringing of the action. See the act of limitations, (Patterson's Laws, 353, 354.)

2. Because the act of 1786 was repealed by that of 1813, and consequently Mr. Boudinot the trustee had no powers but what he derived under the deed of 1770; which gave him no authority to make partition and conveyances of the property. Or that, if it was not repealed, then under the act of 1786, the trustees were not authorized to perform those acts until the bog was drained and a number of other acts performed, none of which appear to have been performed.

3. Because the possessions of the defendants being stated to be several, they could not be jointly sued in one ejectment. Runn. Ej. 69.

In answer to the first objection, Griffith and Richard Stockton, for the plaintiff, contended that the deed of bargain and sale to the trustees passed the actual possession to them, which the law presumes continued in them, unless an ouster had been shown. Patterson's Laws, 6.

2. Admitting the act of 1786 to have been repealed by that of 1813, the legal estate continued in the trustees under the act of 1770, and they had a right to convey it to the cestui que trusts, who alone can question the validity of the deed to the lessor of the plaintiff, or any other of the acts or omissions of the trustees. The defendants who set up no title, have certainly no such right.

In answer to the third point, they relied upon 2 Johns. 438; 5 Johns. 278.

[Before WASHINGTON, Circuit Justice, and PENNINGTON, District Judge.]

WASHINGTON, Circuit Justice, after stating the case, proceeded.

Upon the facts stated in the demurrer, the defendants' counsel have raised the following objections to the plaintiff's recovery:

1. That it does not appear that the lessor of the plaintiff, or those under whom he claims, was in possession of the premises at any time within twenty years prior to the bringing of this action, and consequently that his action is barred by the act of limitations of this state, passed in the year 1799, [Feb. 7; 23 Sess. Laws, 456.]

To this objection, it is a conclusive answer, that by the conveyance to the original proprietors Schuyler, Brockholst and Bayard, the possession passed in like manner as if the grantees had taken actual possession, and that the trust deed of 1770 operated in like manner to vest the possession in the trustees. The law of this state, passed on the 17th of March 1713, (Patterson's Laws, 6,) is express upon this subject. Independent of this, the demurrer states that in 1772, the trustees entered upon the land and took actual possession. The possession then having once been in the trustees, the law presumes it to have continued in them, until an ouster of dispossession is shown by the other side. There is nothing stated in the demurrer which can be construed into a disturbance of the possession then shown to have existed in the trustees prior to the years 1809 and 1810, when sales were made to certain persons under the act of 1806. But this was far short of twenty years prior to the bringing of this action, which was in 1818, and consequently the case is clear of this objection.

The next objection is, that the act of June 1786, having been repealed by that of the 18th of February 1813, the surviving trustee was thrown back upon the deed of 1770, which gave him no power to make partition of the land, or to execute conveyances to the cestui que trusts. Or if the act of 1786 was not repealed, then by force of its provisions, the trustees were not authorized to make partition and conveyances until after the bog was drained, the expenses paid, and the title of the several claimants under the original proprietors examined into and ascertained. Then these acts not having been performed, the deed to the lessor of the plaintiff passed no title to him. The view which I take of this objection will render it unnecessary to examine the arguments of the counsel, on the one side to maintain, and on the other to deny the validity of the repealing law of 1813; because, if the defendants' counsel be right in asserting its validity, it nevertheless does not follow, nor is it even contended that the trust deed was not in as full operation after the repeal, as it was at and previous to the passage of the repealed law. It is clear that the title of the trustees under the deed of 1770 to the legal estate in this property, was not, and could not have been divested by the act of 1786; and that no estate passed under that act to the trustees, which could impugn their former title, although it might operate as a statutory confirmation of it. This being the case, the right of the surviving trustee, clothed as he was with the legal estate in fee simple, to convey the same to whom, and in what manner he might think proper, cannot be questioned in a court of law, nor can the

title of his grantee be impugned, unless it be by some person having a better legal title in himself to oppose to it. The defendants have shown no title, either legal or equitable; but did they even stand upon the high ground of cestui que trusts, they could not be permitted, in a court of law, to set up their equitable, against the legal estate of the trustee.

It is contended that the trustees had no authority, by the deed of 1770, to make partition of the land, and to convey the same to those entitled to the equitable estate. Let this be granted; still they were the legal owners of the estate, subject to the trusts declared in the deed; and if none were declared, they held for the grantors by way of a resulting trust. If they have exercised powers not conferred upon them, and performed acts in violation of their duty as trustees, it is in a court of equity only that they can be called to answer, and it is there only that their errors, or mal-administration can be scrutinized and corrected. The reason is, that before that tribunal, an equitable title may be opposed to a legal one; besides which, there is no other tribunal which can so conveniently investigate the conduct of trustees, and administer an adequate remedy to the parties. If they have conveyed away the trust property in derogation of the rights of the cestui que trust, the purchaser, if he had notice of the trust, is treated in that court as a trustee, in relation to the property so purchased; but he is nevertheless considered as the legal owner of the estate, for the use of those entitled to the equitable title. The case is in no respect varied, if we should agree with the plaintiff's counsel, that the act of 1786 was not repealed. For upon that supposition, Mr. Boudinot and his associates were constituted trustees for other purposes than those mentioned in the deed of 1770, but equally for the use of the grantors in that deed, and their representatives. I am aware of no distinction between a statutory trustee, and one who is so constituted by deed. Whether he be the one or the other, his legal title cannot, in a court of law, be questioned or opposed by an equitable claimant. In either case he is answerable to his cestui que trust for breaches of duty, before a court which places an equitable title upon as high ground as a legal one, and merely inquires which of the parties has the superior equity.

3. The last objection is formal. It occurred in the case of Jackson v. Woods, 5 Johns. 278, where it was decided, that when two or more persons holding distinct and separate possessions of the premises mentioned in the declaration of ejectment, are united in the same declaration, and jointly enter into the common rule, and plead; judgment may be given against them separately, if their separate possessions are found by the jury. With this opinion I concur; nor can I distinguish that from the present case, on the ground that the question there arose on a verdict, and here on a demurrer to evidence. The latter states that at the time of the service of the declaration, the defendants held their possessions in severalty, which is, in effect, the same as was found by the jury in the case referred to. It adds nothing to the objection in either case, that the particular parcels so severally held are not stated in the demurrer, or found by the jury. The plaintiff is to execute the writ of possession at his peril, and must take care that no more is taken from each defendant than he is entitled to.

PENNINGTON, District Judge. The case turns on the validity of the deed to Stephen Bayard, the lessor of the plaintiff, dated in 1818. The authority for making that deed is derived, as the recitals in it set forth, from the deed of 1770, and also from the act of the first of June 1786. This act had been repealed about five years before the deed to Bayard was executed; and I cannot perceive any constitutional objection to the repealing act. No rights to third persons had been gained under the repealed act. I cannot consider that act as any thing more or less than appointing the persons named in it commissioners, to perform towards this estate certain acts which it seems had not been done. The deed to Mr. Bayard then must rest on the authority of the deed of 1770. This, it is true, conveys a fee to Mr. E. Boudinot, and two other persons; in trust however to "to enable them to commence and prosecute suits, for the recovery of the land thereby conveyed; and to bring the same to an immediate settlement." The conveyance to Mr. Bayard was no part of their duty, and appears very extraordinary at this time, nearly fifty years after the trust was created. But it is contended that the legal estate being in Mr. Boudinot, and he leaving the same to Mr. Bayard, it is now vested in him, and I incline to think that this must be so, and that a court of law cannot take notice of a departure of a trustee from a strict adherence to the trust. In such a case the grantee must be considered as a trustee, for the benefit of the cestui que trust. I am not however satisfied, that in case of a conveyance fraudulently and collusively obtained from a trustee, a court of law would be compelled to carry it into effect. But if this character had been intended to be stamped on this deed, it ought to have been put to the jury to find the fact, and not left to the court to infer fraud. Judgment against Colefax for such part of the premises as is in his possession, and against the defendant Schuyler for the part in his possession.

---

BAYARD, (GRUBB v.)  See Case No. 5,849.
BAYARD, (KONING v.)  See Case No. 7,924.