## LAZARUS *v.* PHELPS.

ERROR 'TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF TEXAS.

No. 105.   Argued December 12, 1894. — Decided January 28, 1895.

In an action to recover the rental value of plaintiff's land alleged to have
been wrongfully taken possession of and occupied by defendant for
grazing purposes, a former judgment in plaintiff's favor against the
defendant for a like possession and occupation of those lands terminat-
ing before the commencement of this action, is admissible in evidence
against defendant.

A party who is not prejudiced by an erroneous ruling of the judge in the
trial below has no right to complain of it here.

The court having instructed the jury that the obligation of the defendant
rested entirely upon the theory that he had stocked the plaintiff's lands
to their full capacity and enjoyed their exclusive use, it would have been
irrelevant to further charge that defendant's liability was limited to the
consumption by his own stock.

THIS was an action originally begun by William Walter
Phelps to recover of the plaintiff in error, Samuel Lazarus,
the rental value of 186,880 acres of land in Texas, from
February 5, 1890, at 8 cents per acre.   The allegation of
the petition was that defendant permitted large herds of
his cattle and horses to graze upon plaintiff's lands and used
them for pasturage for other cattle, for which he received
hire.

The evidence showed that Phelps was the owner in fee
simple of 149,716 acres of land situated in four different
counties in Texas.   The land was in sections of 640 acres
each, alternating with like sections owned by the public
school fund of Texas, plaintiff owning the odd-numbered and
the fund owning the even-numbered sections.   In July, 1887,
defendant Lazarus rented from the State, for four years from
that date, the alternate sections of land so owned by it.   Prior
to the time of Lazarus' lease, Phelps had a much larger quan-
tity of land, but before the trial had sold 30,000 acres.

Plaintiff's lands had been rented to Curtis and Atkinson upon a lease which expired on April 15, 1887. Curtis and Atkinson built wire fences around the land, or a greater portion of it, enclosing both the lands owned by the plaintiff and those owned by the State, which were subsequently leased to defendant. The fence was partly upon plaintiff's land, and partly upon the school land. Phelps had no cattle within the enclosure, but the settlers, some 150 in number, had about 3000 head of cattle running at large and mingling with defendant's cattle. Defendant had within the enclosure a number of cattle estimated by the witnesses at 10,500 head.

Plaintiff introduced testimony, which was objected to, showing that on September 17, 1888, he had instituted a suit similar to this one, against the defendant, and on February 5, 1890, recovered a judgment for the use and occupation of the land to that date. Plaintiff's evidence tended to show that the land had been stocked to its full capacity. Defendant's evidence tended to prove the contrary. Plaintiff also offered evidence showing the value of the land for grazing purposes, during the time covered by this suit, to have been four cents per acre per annum, or $5988.14. The trial resulted in a verdict and judgment for plaintiff in the sum of $5460.32. Defendant thereupon sued out this writ of error.

*Mr. F. C. Dillard* for plaintiff in error.

*Mr. Leigh Robinson* for defendants in error.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

A similar case between the same parties was before this court, and is reported in 152 U. S. 81. In that case the rental value of the same lands from April 15, 1887, to February 5, 1890, was recovered, and the judgment sustained by this court.

1. The first error assigned is to the introduction of the record of that case. The proof was that, on September 17,

1888, plaintiff instituted a suit in the same court, upon a petition containing allegations similar to those in this case, against the defendant for the use of the land after the expiration of the Curtis and Atkinson lease, and in such suit recovered judgment for the use and occupation of said lands up to February 5, 1890, in the sum of $8417. This evidence was offered to establish the fact that defendant did have exclusive possession of said land as charged by plaintiff, and to show that plaintiff had claimed for the use and value of his land from the time of the original occupation of the same by the defendant.

If this had been a mere action of trespass on lands, although the trespass was a continuous one, it might well be said that proof that certain trespasses were committed upon divers days and times before a certain date had no legal tendency to prove that the same trespasses continued beyond that date. But the petition in that case, which is admitted by the bill of exceptions to have been similar to the one filed in the case under consideration, averred not only that defendant, without lawful authority and by force of arms, entered upon such lands, and pastured his cattle there, but that during the whole of said time he converted the said land to his own use, and appropriated and took to himself all its benefits; that at the expiration of the lease to Curtis and Atkinson, the said Lazarus, defendant, purchased all the cattle of the said Curtis and Atkinson, which were then running upon the said lands; that defendant, instead of surrendering said lands to the said plaintiff, as the said Curtis and Atkinson were bound to do, maintained possession thereof, and has since maintained the fence around the whole of said lands, excluding others and the cattle of others therefrom, and "*has held, and is now holding, the exclusive possession of the same to his own use and benefit.*" In other words, the basis of the petition was not only the depasture of these lands, but the exclusive use and occupation of the same. The verdict and judgment in that case settled the fact that the defendant was in the use and occupation of said lands up to February 5, 1890, and, in the absence of evidence to the contrary, such possession would be presumed to continue after that date.

Possession of real property once proven to exist is presumed to continue. *Brown* v. *King,* 5 Met. (Mass.) 173 ; *Gray* v. *Finch,* 23 Connecticut, 495 ; *Currier* v. *Gale,* 9 Allen, 522 ; *Smith* v. *Hardy,* 36 Wisconsin, 417 ; *Bayard's Lessee* v. *Colefax,* 4 Wash. C. C. 38. As the evidence was offered to establish exclusive possession in the defendant, we think the record of the former judgment was competent.

2. Exception was also taken to the charge of the court that, if the jury believed from the evidence that since February 5, 1890, the defendant had possession of the lands of the plaintiff within said enclosure, and claimed and exercised the exclusive use and enjoyment of plaintiff's lands for grazing purposes, and attempted to exclude others therefrom, either by maintaining fences or line riding, or by force through his employés, or by any or all these means, then they should find for the plaintiff such sum as the evidence showed the reasonable value of the use and occupation of plaintiff's lands so had by defendant for grazing purposes, from said 5th day of February, 1890, to the date of trial. Defendant excepted to this charge on the ground that an attempt to exclude strangers from the pasture would not render him liable, there being no attempt to exclude plaintiff or any one claiming under him.

Had all the lands within the enclosure belonged to the plaintiff, the action of the defendant, in excluding others therefrom, would have been evidence from which the jury might reasonably infer that defendant claimed the exclusive right of possession of the lands; but the argument is that, as the alternate sections had been leased by the defendant, he had a lawful right to exclude every one from the enclosure, so far as he had leased it, except the plaintiff or his lessees, and as he could not exclude others from his own lands without also excluding them from the plaintiff's, the court erred in leaving this fact to the jury as an assertion of an exclusive right to the possession of plaintiff's lands. He had as much right as the plaintiff to exclude strangers from the enclosure, since in depasturing plaintiff's lands, they would also depasture his own. But the decisive answer to this argument is that the proposition of the court was not laid down in the alternative,

that is, that if the defendant exercised the exclusive use and enjoyment of the plaintiff's lands, *or* attempted to exclude others therefrom, he would be liable; but, after charging them that they must find an exclusive use and enjoyment of the lands by the defendant, the court added a further requirement, which appears to have been unnecessary, that they must also find that he had attempted to exclude others therefrom. Perhaps, however, all that was meant was to call the attention of the jury to this fact as tending to prove a claim of exclusive possession. The court evidently proceeded upon the theory that, under the pleadings in the case, the plaintiff could only recover by showing an exclusive use and enjoyment of his lands by the defendant, and that it was not enough simply to show that he had pastured certain of his cattle there, without also showing that he had stocked the lands to their full capacity. In this view, it was quite unnecessary to add the instruction that they must further find that he had attempted to exclude others therefrom; but this took nothing from what the court had previously charged, and was an instruction of which the plaintiff rather than the defendant had a right to complain. It added to the plaintiff's burden of showing an exclusive enjoyment of his lands that of showing that defendant had also attempted to exclude strangers. But it did not relieve him from the duty of showing such exclusive use and enjoyment. In other words, the defendant was not prejudiced by the error and has no right to complain. *Lancaster* v. *Collins,* 115 U. S. 222.

3. In this connection, too, defendant requested the further charge that where several persons own separate tracts of land in the same enclosure, each one has the right to place enough stock therein to consume the grass upon his part of the lands, and is not liable to the others therefor; but if he places therein more stock than his part of the land will reasonably maintain, he will be liable to the other owners for the excess, and no more; and also that if the jury believed from the evidence that plaintiff's grass was consumed by stock of defendant's and other persons, then defendant would only be liable for the part consumed by his own stock, to be ascertained by appor-

tioning the total damage in the proportion that the number of his stock bears to the total number doing the damage.

But, as already stated, the court put the whole liability of the defendant upon the theory that he had enjoyed the exclusive use and occupation of plaintiff's lands, and had stocked them to their full capacity. If this be so, (and there was evidence to that effect,) then undoubtedly plaintiff would be entitled to recover the entire rental value of the lands for grazing purposes. If it were not so, then under the charge of the court the plaintiff could recover nothing, though defendant may have pastured thousands of his cattle upon these lands. Whether the court was correct in its view that, under the pleadings, plaintiff could not recover for a partial depasturage of his lands, is quite immaterial, since if the jury had found such partial depasturage it would have been their duty, notwithstanding, to have returned a verdict for the defendant. In the opinion of the court, the whole obligation of the defendant rested upon the fact that he had stocked the plaintiff's lands to their full capacity, and had thus enjoyed their exclusive use and occupation. The charge requested was, therefore, irrelevant.

There was no error in the action of the court, and its judgment is, therefore, *Affirmed.*