## In re BLACK (two cases).

District Court, N. D. New York. February 2, 1929.

524

Cregg Bros. & Rulison, of Syracuse, N. Y. (Howard V. Rulison, of Syracuse, N. Y., of counsel), for bankrupt.

McGowan & Stolz, of Syracuse, N. Y. (Benjamin Stolz, of Syracuse, N. Y., of counsel), for trustee.

COOPER, District Judge. This is a motion by the trustee in bankruptcy to punish both of the bankrupts for failure to comply with an order requiring them to turn over to the trustee the sum of $9,000, moneys in their possession belonging to the bankrupt estates and withheld by them from the trustee. The bankrupts are husband and wife.

The question as to whether or not the bankrupts had this $9,000 in their possession at the time bankruptcy ensued, was sharply contested before the referee in bankruptcy. After the hearings, the referee held that the bankrupts did have such $9,000 in their possession at such time, and directed them to turn the same over to the trustee. The order of the referee was made on the 14th of March, 1928, and a review of the turn-over proceedings was made before my colleague, Judge Bryant, and he duly confirmed the order of the referee on the 14th day of December, 1928. Thereafter, and on the 25th day of December, 1928, the trustee obtained an order returnable before the writer on the 5th day of January, 1929, requiring the bankrupts to show cause why they should not be punished for contempt because of their failure to obey the turn-over order thus made by the referee and confirmed by the District Judge.

The bankrupts have submitted on this motion an affidavit in which they again set forth what they claim were the ways in which and the purposes for which they expended all of the various amounts of money which they admit having received from the sale of certain property shortly prior to the bankruptcy, and they assert that they had none of the money left at the time of the inception of the bankruptcy proceedings. They further say that they were confused when examined before the referee, and did not clearly state what they intended to state.

The attorneys for the bankrupt ask the court to take proof, or refer the matter to a special master to take proof, in support of the bankrupts' contention that they did not have the $9,000, which they were directed by the turn-over order to deliver to the trustee.

No suggestion is made by the bankrupts in their affidavits, and no contention is made by the attorney for the bankrupts, that proof is desired as to any happenings since the making of the turn-over order. It is not suggested that any of this money has since that time been stolen from the bankrupts, nor invested by them in perishable goods which have been destroyed by fire, water, or other elements, or otherwise disposed of in ways for which they are not responsible. The inquiry sought by the bankrupt is an inquiry as to whether or not the bankrupts had the $9,000 at the time of the filing of the petition in bankruptcy. To take such proof and act upon it would be, in effect, to grant a new trial of the turn-over order and nullify the confirming order of the associate District Judge.

The referee found as a fact that the bankrupts had in their possession the $9,000, and that the money belonged to the estate of the bankrupts, and thereupon ordered the bankrupts to pay it to the trustee. The District Court confirmed the decision. No appeal from the decision of the District Court was taken. The matter then is res adjudicata as to the District Court, and there is no power in another District Judge to again review the existing proceedings nor to grant a trial de novo. This court is therefore precluded from any inquiry as to whether or not the bankrupts did, at the time stated, possess the money of the bankrupt estate. The only inquiry which the court may now make is as to whether or not "something has happened since the turn-over order was made, showing that since that time there has newly arisen an inability on the part of the bankrupt to comply with the turn-over order."

In re Oriel (D. C.) 17 F.(2d) 800, affirmed in (C. C. A.) 23 F.(2d) 409, affirmed under title of Prela v. Hubshman in 49 S. Ct. 173, 73 L. Ed. ——, decision handed down January 14, 1929, and not yet [officially] reported.

It having been conclusively established that the bankrupts on the said 14th day of March, 1928, had possession of $9,000 belonging to the estate of the bankrupt, such state of facts is presumed to continue until the contrary is shown. Lazarus v. Phelps,

156 U. S. 202, 15 S. Ct. 271, 39 L. Ed. 397; U. S. ex rel. Paleais v. Moore (C. C. A.) 294 F. 852.

The bankrupts have not offered any proof or allegation of newly arisen inability to obey the order of the court to rebut this presumption. Apparently it cannot be rebutted.

Failure of a bankrupt to obey an order of the court to turn over property to a trustee in bankruptcy is a civil contempt. The degree of proof required is not proof beyond a reasonable doubt, because it is not a criminal contempt, but clear and convincing proof such as is necessary to establish a fraud. Prela v. Hubshman, supra.

This runs, however, more to the degree of proof required to grant or sustain the turn-over order than to an order adjudging the bankrupts in contempt in a case like this. There being no proof and no pretense of proof of an inability arising since the turnover order to obey that order, it follows almost as a matter of course that an order adjudging the bankrupts in civil contempt for failure to obey the order must be granted.

The numerous cases cited in the brief for respondents were decided when the law was in confusion as to whether or not failure to obey such an order was a civil or a criminal contempt. The situation is now clarified by decision of the United States Supreme Court. It is not necessary, therefore, to discuss those numerous cases.

It is well said that the court should proceed cautiously in punishing by indefinite imprisonment disobedience of orders in civil actions, especially turn-over orders, which are usually made without direct evidence of physical possession by the bankrupts. This runs, however, more to the granting of the turn-over order than to the contempt order. The caution will undoubtedly be carefully considered by all judges who are confronted with the disagreeable task of granting turnover orders and of imposing punishment for failure to obey such orders. Nevertheless, the judges must face the task with which they are thus confronted and do their duty as the law requires in a proper case. This court ventures to say that there is no reason to believe that any person will be confined in jail for an undue time for contempt in failing to obey a turn-over order in bankruptcy.

The United States Supreme Court, in Prela v. Hubshman, supra, quoted with approval from In re Epstein, 206 F. 568 (D. C. Pa.) in which, among other things, the District Court said:

"Actual or virtual imprisonment for debt has ceased, but imprisonment to compel obedience to a lawful judicial order (if it appear that obedience is being wilfully refused) has not yet ceased, and ought not to cease, unless it should be thought expedient to destroy all respect for the Courts by stripping them of power to enforce their lawful decrees."

An order may be entered accordingly directing the bankrupts to be confined until they shall pay the $9,000 to the trustee. The order may contain a stay for 20 days within which an appeal may be taken. If there is a child under the age of 12 years, the order must contain a stay as to the bankrupt wife until the further order of the court, application for which may be brought before the court on at least 2 days' notice.

If there is no child under the age of 12 years, the order should provide that it shall not be effective as to the wife until 20 days after entry of the order entered herein and service of a copy thereof on the attorney for the bankrupts, and, in the event of an appeal, then until 20 days after entry and service of the order entered upon decision of the appeal.