**BLAIR et al. v. DURHAM.**

No. 9281.

Circuit Court of Appeals, Sixth Circuit.

April 9, 1943.

John Bell Keeble, of Nashville, Tenn. (Keeble & Keeble, of Nashville, Tenn., on the brief), for appellants.

John J. Hooker, of Nashville, Tenn. (David P. Murray, of Jackson, Tenn., and Walker & Hooker, of Nashville, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, Algernon Blair, doing business as the Algernon Blair Construction Company, was general contractor for the repair of and improvements on, the United States Post Office, Customs House and United States Court Building in the city of Nashville, Tennessee, and appellant, C. W. Roberts, was the Superintendent and Manager for his co-appellant. The work was being done while the building was occupied and in use by officers and employees of the United States.

On or about August 17, 1938, appellee, Nelle B. Durham, a stenographic clerk in the Social Security Division in the office of the Collector of Internal Revenue, while at work in one of the rooms where the rebuilding under appellant's contract was going on, was struck in the head and injured by a heavy piece of timber falling from a scaffold.

Appellee originally filed this action on January 14, 1939, and alleged in her complaint that "by reason of the negligence and carelessness of defendants, their agents and servants in handling certain heavy timbers on and about the scaffolding that was erected in the office in which the plaintiff was working, a large and heavy piece of board approximately 2x4 inches in width and thickness and about 3 feet long was permitted to fall from said scaffolding, which was about 10 feet above the floor, and onto plaintiff's head with great force and violence injuring her."

Issue was joined on this complaint and the cause came on for trial before a jury. In the course of the trial on August 15, 1940, appellee with the consent of the court filed an amended complaint alleging the same facts with the following revision: "The defendants had erected said scaffolding and provided it for the use of persons

engaged in the installation of air-conditioning equipment in said building and said scaffold was erected in such a manner that it did not protect persons, including the plaintiff, who were required to work thereunder, but was erected in such a manner that the defendants might have reasonably anticipated that heavy objects would be likely to fall therefrom."

At the time the amendment was filed, the empanelling of the jury was set aside and the cause continued. Thereupon appellants moved to dismiss the amended complaint on the ground it stated a new cause of action and was barred by the Tennessee Statute of Limitation of one year. (Code of Tennessee, Sec. 8595.) Said motion was overruled by the court.

On retrial, the jury returned a verdict on behalf of plaintiff for $6,500. Appellants assign the following points:

1. Appellee's amended complaint was barred by the one-year statutory period of limitation.

2. That the court erred in ruling that Section 8581 of the Tennessee Code made inapplicable the one-year statutory period of limitation, because each of the appellants had resided out of the State of Tennessee, and each was absent from the State of Tennessee and was a resident of another state at the time appellee's cause of action accrued, and

3. The court erred in failing to direct the jury peremptorily to find for appellants.

Rule 15(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that a party may amend his pleadings by leave of court, which leave shall be freely given when justice so requires at any time during the proceedings, and subsection (c) of the rule provides that whenever the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleadings, the amendment relates back to the date of the original pleading. The issue here as to whether the statute of limitations was tolled by the original complaint depends upon whether the amendment stated a new cause of action.

■ A cause of action is the unlawful violation of a right or failure to discharge a duty which the facts show. The variety of facts alleged does not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. A multiplicity of grounds of negligence alleged as causing the same injury does not result in pyramiding as many causes of action as separate allegations of actual negligence.

■ An amendment does not set up a new cause of action so long as the cause of action alleged grows out of the same transaction and is basically the same or is identical in the essential elements upon which the right to sue is based and upon which defendant's duty to perform is alleged to have arisen. As long as a plaintiff adheres to a legal duty breached or an injury originally declared on, an alteration of the modes in which defendant has breached the legal duty or caused the injury is not an introduction of a new cause of action. The true test is whether the proposed amendment is a different matter or the same matter more fully or differently laid.

A comparison between the appellee's original complaint and the amendment leaves no room for doubt that in both she relies on the same unlawful violation of a duty which appellants owed her at the place and in the position where she worked.

■ The original complaint which alleged that appellee's injuries were due to the negligence of appellant's employees in the use of the scaffold states no different cause of action as respects limitation than the amended complaint which stated that her injuries were due to the negligent manner in which the scaffold was constructed, because the two acts alleged were but different invasions of appellee's primary right and different breaches of the same duty. There was but one injury and it is immaterial whether it resulted from the negligence of the users of the scaffold or from its construction, since in either case it was a violation of the same obligation. Missouri, Kansas & Texas Railway Company v. Wulf, 226 U.S. 570, 576, 33 S.Ct. 135, 57 L.Ed. 355; New York Central & Hudson River Railroad Company v. Kinney, 260 U.S. 340, 346, 43 S.Ct. 122, 67 L.Ed. 294; Maty v. Grasselli Company, 303 U.S. 197, 199, 58 S.Ct. 507, 82 L.Ed. 745; Cincinnati, N. O. & T. P. Railway Company et al. v. Gray, 6 Cir., 101 F. 623, 50 L.R.A. 47; Clinchfield R. Co. v. Dunn, 6 Cir., 40 F.2d 586, 74 A.L.R. 1276; Atwood v. National Bank of Lima, 6 Cir., 115 F.2d 861.

■ The trial court ruled that the question of whether a new cause of action was stated by the amendment to appellee's complaint was immaterial in view of Section 8581 of the Code of Tennessee, which provides that while the defendant is absent from or a non-resident of the state for a certain period, the time of such absence or non-residence shall not be taken as any part of the time limited for the commencement of the action. Appellants insist that in order to come within the terms of Section 8581, appellee must plead and prove such absence or non-residence and further that there was neither pleading nor proof to support the trial court's ruling on this issue. In view of the fact that we have concluded that appellee's cause of action was not barred by the one-year statute of limitations, the rights of appellants are in no way adversely affected by the ruling of the trial court, therefore, we do not give consideration to this assigned error. City of San Juan v. St. John's Gas Company, 195 U.S. 510, 520, 25 S.Ct. 108, 49 L.Ed. 299, 1 Ann.Cas. 796; Lazarus v. Phelps, 156 U.S. 202, 206, 15 S.Ct. 271, 39 L.Ed. 397; Struthers v. Drexel, 122 U.S. 487, 495, 7 S.Ct. 1293, 30 L.Ed. 1216.

Appellants urge three grounds in support of their contention that the trial court should have peremptorily instructed the jury to find for them, (1) that the scaffold in question was constructed by the Farwell Company, appellant Blair's sub-contractor, the work being done by the employees of appellant Blair and under the supervision of appellant Roberts, and that the rule of the "loaned servant" applies, (2) that the uncontradicted evidence shows that appellants were free from negligence in building and maintaining the scaffold in question, (3) that at the time of the injury to appellee, the scaffold in question was in the sole use and exclusive supervision of the Farwell Company, an independent contractor of appellant, Algernon Blair.

■ The loaned servant doctrine is defined to be that "when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent although he remains the general servant of the person who lent him." Powell v. Construction Company, 88 Tenn. 692, 13 S.W. 691, 694, 17 Am.St. Rep. 925. In our opinion this rule has no application to the undisputed facts in the case at bar.

The evidence shows that the scaffold was constructed by carpenters employed by appellant, Algernon Blair Construction Company, supervised by the construction superintendent of that company with the specifications for the scaffold outlined generally by the superintendent of the Farwell Company. The expense of building the scaffold was borne by the Farwell Company and the other sub-contractors working on this job who also used the scaffold.

The appellant, Algernon Blair Construction Company, first used the scaffold for digging out plaster through the ceiling to permit the duct to go behind the plaster for the installation of the air cooling system. This was done in the room where appellee was injured and for this work appellants used a tarpaulin to keep debris, tools or appliances from falling on those working immediately under the scaffold.

■ There was no lending of employees by appellants in the case at bar. Appellant, Algernon Blair was the promoter or the original party to the enterprise. He had an interest therein as a joint adventurer with the others who used the scaffold in their part of the work. The facts in the case leave no room for doubt that a joint venture was intended and created by the parties. It follows from this that the liability of the parties was either joint or several. Swain v. Tennessee Copper Company, 111 Tenn. 430, 78 S.W. 93.

■ Appellant's insistence that there is no evidence in the record showing that the scaffold was negligently constructed and maintained is without support. Some of the witnesses testified that the edges of the scaffold were flush with its floor and that there was no shield to keep objects from falling therefrom. Others testified there was a toe-board at the edge of the scaffold. The uncontradicted evidence shows that in the normal course of the work, the platform of the scaffold would be used as a place for storing tools and material and that it might reasonably have been foreseen by the builders of the scaffold that these tools and building material would fall and injure some of the workers underneath the scaffold, unless precautions were taken to avoid such possibility. The evidence on this issue made it a question for the jury.

■ It is true that the evidence shows that at the time appellee was injured, the scaffold in question was being used solely by appellant's sub-contractor, Farwell

Plumbing & Heating Company, and that an employee of that company who had been using the piece of timber for spacing and lining up the air duct, placed it in the air duct and it was caused to fall therefrom by vibration from riveting being done on the duct. However, these facts do not relieve appellants from liability under the applicable law of Tennessee.

 It must be remembered that the work of appellee and of her associate workers was made dangerous and their situation perilous, not from the nature of the work contracted to be done on the building, but from the manner in which appellants insisted upon doing it while appellee was working. Appellants should have known that using the scaffold without proper guards to prevent objects from falling therefrom, would render the work inherently and necessarily dangerous. The rule applies that when a contractor for the repair or construction of a building employs a sub-contractor to do work upon it which, from its nature, is likely to render the premises dangerous to persons who may come lawfully upon it, the contractor is not relieved by reason of his sub-contracting the work from the obligation of seeing that due care is used to protect persons lawfully on the premises. The use of the scaffold in question without guards was inherently dangerous under the circumstances and appellee had the right to expect that the premises would be made reasonably safe for her insofar as the use of the scaffold in the work was concerned.

It was the duty of the general contractor to have required the sub-contractor to furnish sufficient protection around the scaffold to avoid injury to those working beneath it, or to have taken such precaution himself.

The case of Smith v. Bank of Commerce & Trust Company, 135 Tenn. 398, 186 S.W. 465, 18 A.L.R. 788, relied on by appellants, is not controlling here. In the cited case, a contract was entered into between an engineering company and the bank for the construction of an annex to a building and the repair and remodeling of the old part of the structure. In the course of the work, a hot rivet was dropped by an employee of the contractor on a pedestrian on the street severely injuring her. She sought to hold the owner of the building liable for the negligence of its contractor. The court denied her relief on the ground that the negligent act of the contractor was only incidental to, or a collateral detail of, the work, and not a necessary and natural result which the owner of the building might have reasonably anticipated. In the case at bar, the contractor set in motion the event which ultimately resulted in appellee's injuries.

According to the evidence of the appellee, the defect which occasioned her injury resulted directly from the acts of appellants. The dropping of the timber was not purely collateral to the work which appellants had sub-contracted to be done.

In the case of McHarge v. Newcomer & Co., 117 Tenn. 595, 100 S.W. 700, 9 L.R.A.,N.S., 298, the occupants of a storehouse contracted with an awning manufacturer to put their awnings in proper condition, the manufacturer to exercise his own judgment as to the means and manner of doing so without directions from the proprietors as to how the repairs should be made or the work done and without any control by the proprietor over the instrumentalities to be used. In doing this work the contractor took no precautions to prevent the falling of awnings and tools on pedestrians walking on the street, and an awning roller fell and hit a pedestrain. The court held the owners of the store building liable for the negligence of their independent contractor.

In our opinion the case at bar is controlled by the McHarge case. Judgment affirmed.