Mary Dell **RICHARDSON** and Edward W. Richardson

v.

**UNITED STATES** of America.

Lena Mae **TAYLOR** and Humbert D. Taylor

v.

**UNITED STATES** of America.
Civ. Nos. 5102, 5395.

United States District Court
W. D. Tennessee, W. D.
Feb. 21, 1966.

George E. Morrow, Martin, Tate & Morrow, Memphis, Tenn., for plaintiffs Richardson.

Sam F. Cole, Memphis, Tenn., for plaintiffs Taylor.

Odell Horton, Jr., Asst. U. S. Atty., Memphis, Tenn., for Government.

BAILEY BROWN, District Judge.

These are actions under the Tort Claims Act (28 U.S.C.A. Secs. 1346(b) and 2671 et seq.) to recover damages for personal injuries suffered by Mrs. Richardson and Mrs. Taylor. Their husbands sue only for derivative damages, and henceforth we will refer to the injured plaintiffs as "plaintiffs." These plaintiffs were employees of a subcontractor under a prime contractor (Pace Corporation) which had a contract with the Government to produce photo flash bombs. An explosion occurred while these plaintiffs were so employed, causing the injuries for which they sue. Plaintiffs contend in general that the Government owed them a duty of care with respect to their safety, that Government employees were guilty of negligence in failing to meet this duty, and that their injuries proximately resulted from this negligence.

It is undisputed that, though there were Government employees maintained on the premises for the purpose of inspecting for product quality and for safety, plaintiffs were employees of an independent contractor which controlled the details of the production process. It is further undisputed that this employer owned and was in possession of the premises and equipment and supplied all materials. It is true that, under the contract, all materials became the property of the Government when they were allocated to production under this contract; this arrangement, however, was made only to secure the Government, since it advanced payments, and the risk of loss remained with plaintiffs' employer.

In contending that the Government had a duty of care to them, the plaintiffs rely on three theories:

1. That the Government employees, in carrying out its safety program, induced these plaintiffs reasonably to rely on the Government for their safety, which created a duty of care to them on the part of the Government. This theory is based on the "good Samaritan" rule recognized and applied by the court in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

2. That the Government employees should have recognized during the progress of this work that a peculiar unreasonable risk of harm to these plaintiffs had been created which required special precautions and that this raised a duty on the part of the Government to these

plaintiffs to exercise these precautions. This theory is based on the rule contained in the Restatement, Torts (2d), Sec. 413 and particularly Comment d.

3. That the Government so retained control of the safety program that it had a duty to exercise reasonable care for the safety of these plaintiffs. This theory is based on the rule contained in the Restatement, Torts (2d), Sec. 414.

It should be recognized at the outset that, in this factual context, there is a serious question whether the Government owed the plaintiffs a duty of care. We will therefore first take up these theories of duty and in the order above stated. Since we conclude that the Government had no such duty, we will not deal with the question of alleged negligence on the part of Government employees, but we will, before concluding this opinion, briefly discuss the question of causation.

I

THE "GOOD SAMARITAN" RULE

The proof shows that under the production contract the responsibility for safety of plaintiffs and other workers was placed on the contractor. However, the Government had the right to make inspections for safety, which it frequently did through its quality inspectors maintained on the premises and through other inspectors who were sent in from time to time. Further, under the contract, the Government, if it was not satisfied with a safety condition, could withdraw its quality inspectors at that location, which would, if continued for a sufficient period of time, have the practical effect of closing down production there, and this had occurred prior to the accident. While the Government sought to show by testimony that the sole purpose of its safety inspections was to protect its own employees on the premises, we conclude, from the Army regulations and manuals introduced in evidence and from the applicability of the Walsh-Healey Act to this contract, that the purpose also was to protect these plaintiffs and other workers. Moreover, the quality inspec-

tors, while in the building in which these plaintiffs worked, would on occasion, when seeing a practice or condition that appeared dangerous, warn the workers, and the workers would on occasion call the attention of the inspectors to a condition considered by them to be dangerous. Plaintiffs testified, which we assume to be true, that they in general relied on the Government inspectors for their safety because they considered them to be more knowledgeable and more sincerely concerned than was their employer. On the other hand, plaintiffs' employer likewise had a safety program. Plaintiffs and other workers were repeatedly told by their employer not to discuss safety with the Government inspectors and not to report conditions considered to be unsafe to them. On the contrary, they were instructed to take these matters up only with their employer. Moreover, no Government employee ever told plaintiffs or the other workers that the Government was responsible for their safety. It was the employer that took disciplinary action for a safety violation by a worker. Plaintiffs therefore knew that, as between the Government and their employer, the responsibility for their safety had not been accepted by the Government and that it rested on their employer.

The building in which plaintiffs worked was a small wooden one, which was one of many production buildings on the premises. Shortly before this accident, their employer decided to enlarge it by enclosing an existing extension of the concrete floor at one end of the building. Plaintiffs and the other workers recognized that, since they were handling explosive powder, it might be dangerous to perform this work while the construction proceeded. However, after receiving reassurance from their employer's foreman and from a notice posted in the building by their employer to the effect that it was all right for production to continue, they continued to work. They neither sought nor received such assurance from Government employees. After the enclosure was completed, it was necessary to remove the old wall which separated the

newly-created enclosed space from the space theretofore in use. When plaintiffs reported for work at about 7 A.M. on the morning of the explosion, carpenters were removing Celotex and two by fours to which the Celotex was attached. This job had been completed by the time the Government quality inspector arrived at around 8 A.M. to make his regular morning inspection. He completed this inspection and had departed from the building some fifteen or twenty minutes prior to the explosion which occurred at around 9 A.M. It is the contention of plaintiffs that the explosion took place in some powder-filled relay cups being handled by plaintiff Mrs. Richardson, who was a quality inspector for her employer, and that this explosion was caused by the presence on these relay cups of dust and grit which came from the work done by the carpenters that morning. It is further their contention that the Government employees were guilty of negligence in allowing work to continue in the building under those circumstances and in failing to warn plaintiffs of the danger therein.

In Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the court held that the Government was liable to the owner of a vessel which was grounded and damaged as a result of the failure of a light negligently maintained by the Coast Guard. The court said, at page 124 of 76 S.Ct., at page 53 of 100 L.Ed.: " * * * it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." From this case, plaintiffs argue that the Government had a duty of care to them because it did institute and maintain the safety program heretofore described and because they reasonably relied thereon for their safety. The Government argues firstly that it had no *Indian Towing* duty to plaintiffs because, as between it and plaintiffs' employer, it had not undertaken responsibility for their safety. Plaintiffs reply that this makes no difference where, as here, the purpose of the Government's safety program was to increase their safety as well as that of Government employees and they relied on the Government for their safety.

It is not clear from the opinion in *Indian Towing* whether the doctrine may be applied in this context, i. e., where an employee of an independent contractor is making a claim against the Government which is based on reliance on the Government's safety program. The opinion in United States v. Page, 350 F.2d 28 (10th Cir. 1965), which discusses the holding in Blaber v. United States, 332 F.2d 629 (2d Cir. 1964), indicates that, absent an actual undertaking of responsibility for safety as between the Government and the employer-independent contractor, there can be no liability. Both of these cases involve factual situations similar to the instant case. In the *Page* case, 350 F.2d at page 31, it is said:

"Could it be that the United States is liable because although it may not have a duty, it undertook to administer a safety program and thereby became liable for its negligence in carrying it out? Indian Towing Co. v. United States, 350 U.S. 61, 76 S. Ct. 122, 100 L.Ed. 48, and Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354; Grogan v. United States, supra [341 F.2d 39]; Kirk v. United States, supra [270 F.2d 110 (9 Cir.)]. In Blaber v. United States, 332 F.2d 629 (2d Cir.), the court considered an accident which took place in the laboratory of an independent contractor who was conducting contract research and development work for the Atomic Energy Commission. The claimant was killed when an explosion occurred while employees were burning thorium. The court in the cited case referred to the periodic inspections made by AEC representatives of the contractor's plant to see that safety regulations were complied with. The Commission also received periodic reports on safety, it conducted air sample and other tests with regard to radiation. *The*

*court found that the doctrine of Indian Towing Co. v. United States, supra, and Rayonier, Inc. v. United States, supra, did not apply. The court in Blaber held that the contractor had the primary responsibility for safety of its employees and the contractor was charged with and supervised the particular duty which was being performed when the thorium exploded. The same standards are applicable to the case at bar. Hercules had the primary responsibility for the safety of its employees; it had the direct control and supervision over them, and they were working in its plant.* Further, it had the duty to perform and supervise the individual functions, the total of which produced the end product. The function the decedent was performing was but one of many of these in this chain of production. It and the safety of those then working was under the exclusive control and supervision of Hercules. The safety program of the Government did not constitute an exercise of any such control. The fact that the activity may be dangerous has no consequences on this issue. See Wallach v. United States, 291 F.2d 69 (2d Cir.). See also Buchanan v. United States, 305 F.2d 738 (8th Cir.); Nyquist v. United States, 226 F.Supp. 884 (D.Mont.)." [Emphasis ours.]

■ The plaintiffs here, however, are not suing as third party beneficiaries of a contractual undertaking for their safety by the Government; they rely on a tort duty which they claim was raised by the Government's safety program and their reliance thereon, and there seems to be no reason, in theory at least, why the Government could not have a tort duty even in the absence of a contractual undertaking of a responsibility for their safety. But the duty initially rested only on plaintiffs' employer, and it would certainly be necessary that plaintiffs reasonably believe that the Government had undertaken a responsibility as between it and their employer and that they rely

thereon. And while plaintiffs generally relied on the Government employees for their safety, they knew, as we have found, that the Government had not undertaken this responsibility. Moreover, while plaintiffs *generally* relied on the Government employees for their safety, with respect to the allegedly dangerous condition that caused the explosion, plaintiffs relied, as we have found, on the assurances of their employer. We therefore conclude that the Government had no duty of care under the "good Samaritan" rule which was applicable to the risk involved here.

## II

### OTHER THEORIES OF DUTY

■ The other two theories of duty relied upon by plaintiffs, heretofore referred to, take us into the law having to do with the liability of one who employs an independent contractor to do work and an injury to a third person results therefrom. Before discussing plaintiffs' particular theories, it would be well to draw a general distinction. As is made clear in Prosser on Torts (2d), Sec. 64, page 357 and in the Restatement, Torts (2d), Chapter 15, the contractee may be liable on either of two quite different theories: (1) the contractee may under the circumstances have a duty of care to a third person which he negligently fails to meet and therefore there is personal fault on the part of the contractee; (2) the contractee may under the circumstances have a "non-delegable" duty to the third person so that, even in the absence of personal fault, the contractee may be liable to the third person because of the negligence of the independent contractor. Neither of plaintiffs' theories of duty presently being considered involve a "non-delegable" duty in the sense above used; and it appears that plaintiffs are correct in not relying on such a theory because, if for no other reason, the Tort Claims Act (28 U.S.C.A. § 1346 (b)) requires negligence on the part of a Government employee while acting within the scope of his employment. (See also: United States v. Page,

350 F.2d 28, 33, 34 (10th Cir. 1965) and cases cited therein). Rather, these two theories of liability require, if a duty is present, personal fault on the part of the contractee, here the Government.

■ Plaintiffs' theories may best be stated by simply quoting from Secs. 413 and 414 of the Restatement, Torts (2d), upon which plaintiffs rely:

"§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

See Reporter's Notes.

Comment:

\* \* \* \* \* \*

d. Although the employer at the time he lets the contract has no reason to anticipate that conditions will arise which require special precautions to be taken, if in fact such conditions do arise and he knows or should know of them, he is then required to act in the manner required by the rule stated in this Section.

\* \* \* \* \* \*

§ 414. Negligence in Exercising Control Retained by Employer

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

See Reporter's Notes."

Both of these rules, particularly the one contained in Sec. 413, might conceivably be applicable here if we did not follow the direction under the statement of each rule to "See Reporter's Notes." In Tentative Draft No. 7, special note to Chapter 15 (which chapter contains all of the rules having to do with the liability of one who employs an independent contractor to do work, including Secs. 413 and 414), it is said at page 17:

"LIABILITY FOR CONDUCT OF AN INDEPENDENT CONTRACTOR

*Special Note.* The rules stated in this Chapter are, in general, not applicable to make the defendant who hires an independent contractor liable to two classes of persons.

One consists of the employees, or servants, of the defendant himself."

\* \* \* \* \* \*

"The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See § 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the

theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

"Again, when the Sections in this Chapter speak of liability to 'another' or 'others,' or to 'third persons,' it is to be understood that the employees of the contractor, as well as those of the. defendant himself, are not included."

We therefore conclude that these Restatement Chapter 15 sections are not applicable here because plaintiffs were employees of an independent contractor and were working on their employer's premises. (See also, on the liability of a contractee for injuries to employees of the independent contractor, United States v. Page, 350 F.2d 28, 33 (10th Cir. 1965) and cases cited therein.)

Moreover, none of the Tennessee cases relied upon by plaintiffs are applicable here. In McHarge v. M. M. Newcomer & Co., 117 Tenn. 595, 100 S.W. 700, 9 L.R.A.,N.S., 298 (1906), the defendant employed an independent contractor to repair his awning overhanging the street and the contractor negligently dropped a roller which injured a pedestrian. This holding of liability is apparently based on a true "non-delegable" duty theory, not on personal fault on the part of the contractee, which theory, as we have seen, is not in any event available to plaintiffs here, and further the injured plaintiff was not an employee of the contractor. In Blair v. Durham, 134 F.2d 729 (6th Cir. 1943), which applied Tennessee law,

the defendant, a prime contractor, built a scaffold for repairs to a room in a Government building and plaintiff, a Government employee, was injured when an object fell while the scaffold was being used by a subcontractor. The court affirmed the judgment for the plaintiff below on the ground that defendant itself negligently constructed the scaffold; and it affirmed on the additional ground that the defendant, though a contractee as to this particular work, had a duty of care to third persons which it negligently failed to meet but again the injured plaintiff was not an employee of the subcontractor. In International Harvester Co. v. Sartain, 32 Tenn.App. 425, 222 S.W. 2d 854 (1948), the injured plaintiff was an employee of an independent contractor but the defendant was the owner and possessor of the premises on which the injured plaintiff was an invitee and defendant supplied the electricity that injured the plaintiff. In Pierce v. United States, 142 F.Supp. 721 (E.D.Tenn.1955), aff'd 235 F.2d 466 (6th Cir. 1956), the injured plaintiff was an employee of an independent contractor but the Government was the owner and possessor of the premises on which the injured plaintiff was an invitee and the Government supplied the electricity which injured the plaintiff. In Mahoney v. United States, 220 F.Supp. 823 (E.D.Tenn.1963), aff'd 339 F.2d 605 (6th Cir. 1964), the district court held that there was no liability only because of failure of proof as to negligence and causation, but it is clear that the court held that the Government owed the plaintiffs, who were employees of an independent contractor, a duty only because it owned and controlled the premises on which they were injured.

It is undisputed here that plaintiffs were employees of an independent contractor and that their employer owned and was in possession of the premises and equipment. (Actually, they were employees of a subcontractor of the prime contractor. Their employer was a wholly owned subsidiary of the prime contractor. The principles set out and relied upon in

**114**

this section of the opinion would therefore apply to them.) While there is some indication in the foregoing cases that if the Government, as contractee, had supplied the materials that caused the harm, the Government might have owed a duty to plaintiffs, but here the Government cannot be treated as a supplier merely because it took a security title to these materials. United States v. Page, 350 F.2d 28, 32, 33 (10th Cir. 1965) We therefore conclude that the Government as a contractee owed the plaintiffs, employees of an independent contractor, no duty of care under these circumstances.

### III

### CAUSATION

■ While the rulings we have made dispose of these cases, perhaps we should say a word about causation. As stated, it was plaintiffs' theory that dust and grit on the powder-filled relay cups caused the explosion. They introduced proof by eminent experts that abrasion of the relay cups, with the presence of particles of grit on the powder therein, would cause minute hot spots which would in turn set off an explosion. They conceded that there were other possible causes. In any event, the difficulty is that the plaintiffs did not show by the preponderance of the evidence that dust and grit was present on these relay cups. There was proof that there had been dust and grit in the air and on the work tables due to activities that morning of the carpenters. But Mrs. Richardson and the Government quality inspector had just inspected these relay cups prior to the explosion, and they noticed no dust or grit thereon. Therefore, the testimony of the experts that this explosion was caused by the presence of dust and grit on the relay cups is based on an assumed fact not shown by the preponderance of the evidence to exist.

It therefore results that a judgment will be entered for the defendant in both cases, and counsel will prepare the order for entry.